332 S.E.2d 814 (1985)
STATE ex rel. the WEST VIRGINIA MAGISTRATES ASSOCIATION
v.
Glen B. GAINER, Jr., Auditor, etc., and Paul Crabtree, Adm. Dir., etc.
No. 16511.
Supreme Court of Appeals of West Virginia.
March 22, 1985.
Dissenting Opinion July 10, 1985.
*815 William L. Jacobs, Parkersburg, for relator.
J. Bradley Russell, Asst. Atty. Gen., Charleston, for respondents Governor, Auditor and Attorney General.
Mike Kelly, Charleston, for respondent Paul Crabtree.
John R. Homburg and Richard Adkins, Charleston, for respondents President, State Senate and Speaker, House of Delegates.
NEELY, Chief Justice:
Today we revisit one of the issues raised but not decided in Donaldson v. Gainer, ___ W.Va. ___, 294 S.E.2d 103 (1982). In syllabus point 4 of Donaldson, we held that equal protection requires that magistrates receive equal pay for equal work, but we declined to declare the current pay system for magistrates (which is based on the number of people a magistrate serves) unconstitutional in Donaldson because there was no factual showing there that the work of all magistrates is equal.
The original mandamus proceeding before us now was filed by members of the West Virginia Magistrate's Association to compel the State Auditor and the Administrative Director of the Supreme Court of Appeals to pay all magistrates the same salary, to wit, $25,125 per year. The magistrates assert that they have now presented a factual record in support of their position based on time sheets filed in the office of the Administrative Director of the Supreme Court pursuant to W.Va.Code, 51-1-17(b) [1981].
W.Va.Code, 50-1-3 [1984] establishes three salary categories for magistrate court judges: magistrates who serve less than 10,000 in population are paid $17,250 per year; magistrates who serve 10,000 or more in population but less than 15,000 are paid $20,625 per year; and magistrates, who serve 15,000 or more in population are paid $25,125 per year. The statute establishes certain exceptions for the counties of Putnam, Boone, Preston and Jefferson.

I
Petitioners' grounds for relief are the equal protection clause of the Constitution of the United States and article VI, § 39 of the Constitution of the State of West Virginia. We have previously held that W.Va. Const. art. VI, § 39 has an implicit equal protection dimension. State ex rel. City of Charleston v. Bosley, ___ W.Va. ___, 268 S.E.2d 590 (1980). Consequently, the only question to be answered in this case is whether petitioners have proven an equal protection violation according to federal and state standards. In this regard it must be pointed out initially that the petitioners are challenging only an economic classification and not one that involves fundamental constitutional rights such as freedom of speech.
Equal protection questions concerning economic classifications are controlled by the standard articulated in McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) where Mr. Chief Justice Warren wrote:
The standards under which this proposition is to be evaluated have been set forth many times by this Court. Although no precise formula has been developed, the Court has held that the Foruteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens *816 differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [citations omitted]
366 U.S. at 425-26, 81 S.Ct. at 1104-05. This test has consistently been applied by the Supreme Court of the United States. Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); U.S. Dept. of Agriculture v. Moreno, 413 U.S. 528, 538, 93 S.Ct. 2821, 2827, 37 L.Ed.2d 782 (1973).
Our test for determining whether there has been an equal protection violation under State law is substantially the same. As recently as Atchinson v. Erwin, ___ W.Va. ___, 302 S.E.2d 78 (1983) we held:
Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such a classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 39 of Article VI of the West Virginia Constitution.

302 S.E.2d at 84. See also Shackleford v. Catlett, 161 W.Va. 568, 244 S.E.2d 327 (1978); Cimino v. Board of Education of Marion, 158 W.Va. 267, 210 S.E.2d 485 (1974). Furthermore, in Atchinson we reaffirmed the principle enunciated in syllabus point 8 of State ex rel. Heck's v. Gates, et al., 149 W.Va. 421, 141 S.E.2d 369 (1965) where we said:
The well settled general rule is that in cases of doubt the intent of the Legislature not to exceed its constitutional powers is to be presumed and the courts are required to favor the construction which would consider a statute to be a general law.

II
With the foregoing constitutional principles firmly in mind, we must now repair to the factual record that has been made before us in this case. The Annual Report, Magistrate Activity, Caseload Statistical Summary for 1983, compiled by the Administrative Director of the Supreme Court of Appeals and upon which the petitioners rely, clearly shows wide disparities in the types of judicial functions that are performed by small county magistrates vis-a-vis large county magistrates.
In Wirt County, for example, the 1983 Annual Report reveals that the county's two magistrates, who are in the lowest compensation tier ($17,250 per year), disposed of only 800 cases during the entire twelve-month period. This averages out to only 400 completed cases per year per magistrate. Furthermore, this number of cases includes 244 traffic cases, which seldom, if ever, require a hearing or any other judicial activity other than the assessment of a fine and costs over the telephone. Likewise, the total case figure for Wirt County includes dismissals and default judgments in civil actions and the summary dismissal of misdemeanors, all of which involve little judicial work other than signing an order. Even if each of the Wirt County magistrates conducted 400 hearings in 1983, their average daily caseload rate was still only 1.6 cases per magistrate per working day, given a judicial work year of 250 days. If Wirt County magistrates were paid at the highest salary level, namely $25,125 per annum, the per case disposition cost in Wirt County, based on 1983 figures, would have been $62.81 for magistrate salaries alone.
In contrast, the busiest magistrate court in the State, which sits in Mercer County, has four magistrates who each earn $25,125 annually, and that court disposed of 4,610 cases per magistrate during 1983. Consequently, the average Mercer County magistrate handled a caseload 1,153 percent greater than his counterpart in Wirt *817 County. In fact, even if all traffic activity were removed from the Mercer County figures, but retained in the Wirt County figures, the caseload of Mercer magistrates in 1983 was still five times greater than that of the Wirt County magistrates, and the cost per case of magistrates' salaries in Mercer County was only $5.45.
Although the comparison between Wirt County and Mercer County may be the most dramatic of the comparisons that can be made between high-pay and low-pay counties, the same general pattern prevails throughout the State. For example, the per magistrate disposition rate in 1983 in the next five least busy counties were as follows:

COUNTY CASES PER MAGISTRATE
Tyler 563
Gilmer 522
Pendleton 505
Pleasants 457
Calhoun 386

In contrast, the five busiest urban counties (excluding Mercer) had a per magistrate case disposition rate as follows:

COUNTY CASES PER MAGISTRATE
Kanawha 4,281
Monongalia 3,751
Fayette 3,391
Harrison 3,311
Putnam 3,288

Yet the differences in judicial functions between the low salary and high salary magistrates are not only revealed by case disposition statistics, but also by the individual time sheets magistrates file in the office of the administrative director. For example, in August and September, 1984, Kanawha County Magistrate Patsy J. McGraw spent 187.5 and 156.5 hours respectively in judicial activity on the premises of the Kanawha County magistrate court, and she spent 20 and 24 hours respectively on call. Kanawha County has second highest caseload per magistrate in the State and the magistrate court in Kanawha County has a hearing-intensive system that schedules all on-duty magistrates into case disposition activity during their duty hours. Consequently, Magistrate McGraw's time sheet reveals that 91% and 92%, respectively, of her on-duty time during the representative two months in question, (315 total hours) was spent hearing cases in the courtroom and engaging in what the Donaldson court called "performing judicial functions."
During the same two representative months, namely August and September, 1984, the time sheets of Wirt County Magistrate Joseph P. Fulmer indicate that in August he spent 127 hours "actual judicial activity," 449 hours on call, and was off duty 7 days. In September Magistrate Fulmer spent a mere 37 hours in actual judicial activity, 179 hours on call, and 14 days off duty. For both months, Magistrate Fulmer spent a combined total of only 3 hours in the courtroom, or less than 1% of the in-courtroom time spent by Magistrate McGraw during the same period.
The other Wirt County magistrate, Janet Bruce, was off duty 16 out of 24 days in August and spent 0 hours in the courtroom that month. In September, she was off duty 9 days, spent 4 days on call without being called into the office, and spent 4 hours in the courtroom. Magistrate Bruce's two-month total of courtroom hours is also approximately only 1% of the number of hours that Magistrate McGraw spent in the courtroom.

III
One of the principal arguments that the petitioners make to support their right to higher salaries is that although they spend less time in evaluating applications for warrants, holding hearings, evaluating evidence, and preparing judgment orders, they nonetheless are on call 24 hours per day and have less overall personal freedom than their apparently harder working urban counterparts. In Calhoun County, for example, where the 1983 yearly per magistrate case disposition rate was 387, both magistrates claimed to be on call 24 hours per day, every day of the year. Their September, 1984, time sheets, however, show that on the weekends of that month Magistrate L.C. Hamilton was called out on *818 one day for a total of three hours and Magistrate Ruth Gainer was called out on two different days for a total of six hours. In that same month Magistrate Hamilton spent no hours in the courtroom and Magistrate Gainer spent only four hours.
In Clay County, Magistrate Velt King routinely allots on his time sheets a daily number of hours in the office and on call that exceed the twenty-four hours in a day. On his July, 1984, time sheet, which presumably was included in petitioners' statistical summary, Magistrate King claims 32 hours' credit on 10 of the 12 days he worked that month, 27 hours on another day, and 24 hours on another. His total hours worked for the 12 days listed is 399, 111 hours more than the total real time in any 12-day period. In Putnam County in July and August, 1984, Magistrate Lee Roy Cooper worked 17 days and 16 days on duty, respectively, and 14 days and 15 days off. Of the 17 days he worked in July and 16 days he worked in August, only 8 days in each month consisted of 8 or more hours in the courtroom or chambers. Putnam County Magistrate Nancy Boese worked 17 days and 21 days in July and August, 1984, respectively. On only 9 days in July and 10 days in August did she spend eight or more hours in the courtroom or chambers.
Clearly, in all of the counties mentioned, the individual time sheets demonstrate that the small county magistrates do, in fact, perform judicial functions on a part-time basis. The evidence offered by petitioners is insufficient to support their claim for equal pay because it relies heavily on the theory that time spent "on call" is the equivalent of time spent in the courtroom or court chambers performing recognized judicial functions. In Donaldson, this Court specifically ruled that "time spent `on-call' is not time spent in the performance of a magistrate's judicial function," 294 S.E.2d at 112, and, therefore, there is a qualitative difference between hours spent being generally available to answer a summons to the courthouse and time spent actually sitting in the courthouse hearing warrant applications or disposing of contested cases.

IV
Finally, the Court would note that all work has two dimensions, length and intensity. The magistrates in the smaller counties argue here that the length dimension of their work is comparable to the intensity dimension of the work of the magistrates in the big counties. We venture no opinion on that subject, and we might even admit, arguendo, that the length dimension of the work of the small county magistrates does make their duty comparable to the duty of the big county magistrates. Nonetheless, as the Donaldson court held in syllabus point 4, in order to show an equal protection violation it is necessary for a disfavored class to prove that they do not receive "equal pay for equal work."
It is possible for a court to make a neutral, objective determination about whether pay is equal or work is equal. It is not, however, possible for a court to do the same thing when the argument is that work is "comparable." Whether work is "comparable" is a subjective judgment that is best determined either by the marketplace or, in the case of state employment, by the legislature. In enacting the salary schedule found in W.Va.Code, 50-1-8 [1984] the legislature has certainly met the test of McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1960) and Atchinson v. Erwin, 302 S.E.2d 78 (1983). We cannot say that the legislative classification rests on grounds wholly irrelevant to the achievement of the State's objective.
Accordingly, for the reasons set forth above, the rule to show cause heretofore issued is discharged and the writ of mandamus for which the petitioners pray is denied.
Writ denied.
McGRAW, Justice, dissenting:
In Donaldson v. Gainer, 294 S.E.2d 103 (W.Va.1982), this Court unanimously recognized that the constitutional guaranty of equal protection requires that similarly situated *819 magistrates receive equal pay for equal work. I believe that the petitioners in the instant proceeding have demonstrated that full-time magistrates serving smaller populations are subjected to unjustifiable discrimination under the present compensation system.
Under West Virginia Code § 50-1-3 (Supp.1984), magistrates are divided into three classes for purposes of compensation. However, under West Virginia Code § 50-1-4 (1980 Replacement Vol.), magistrates are divided into two classes for purposes of determining the amount of time to be devoted to their official duties. In effect, this statute mandates that all magistrates who serve in a county with a total population of greater than ten thousand devote full time to their official duties. The petitioners herein have not specifically presented this Court with an argument in support of equal pay for those magistrates in eight counties who are, by operation of statute, part-time magistrates.[*] Given this fact, the majority's comparisons of the busiest full-time magistrates with the least active part-time magistrates are of no relevance.
Regarding the disparities in compensation among full-time magistrates, it may be true, for example, that magistrates in Mercer and Kanawha Counties handle larger case loads and thus, spend more office time in the courtroom than full-time magistrates in more sparsely populated counties. But it remains that all are statutorily required to devote full time to their public office. An hour of time in Charleston is identical to an hour of time in Pineville, and both are identical to an hour of time in Greenwich.
The population-based salary scheme designed to set compensation levels of magistrates impermissibly discriminates against those full-time magistrates who serve in the more sparsely populated counties. These magistrates serve on a similar full-time basis, yet receive substantially less pay than their populous county counterparts. If greater case loads during office hours constituted a reasonable justification for higher salaries, then higher "on call" requirements in the more sparsely populated counties would certainly be a counter-balancing justification for the same.
For further illustration of the patent unreasonableness and inconsistency of the full-time magistrate pay system, I point out that the legislature has provided equal pay for all of the State's circuit judges without regard to the population served per judge. See West Virginia Code § 51-1-13 (Supp.1984). Therefore, for example, the two judges in the Seventh Circuit, which is comprised of only one county, serve just over twenty-five thousand people per judge. But in the Fifth Circuit, one judge serves fifty thousand people and must travel to three counties in doing so. All circuit judges are paid equally for their full-time services, irrespective of population or territory size.
The four members of this Court in office when Donaldson v. Gainer, supra, was decided held that the constitutional guaranty of equal protection mandates equal pay for equal work. Apparently, three of these members have now changed their minds. The Constitution requires a majority of three. West Virginia Const. art. 8 § 4. I stand as a minority of one, and, for the foregoing reasons respectfully dissent.
NOTES
[*] The counties which currently have part-time magistrates are Calhoun, Doddridge, Gilmer, Pendleton, Pleasants, Pocahontas, Tucker and Wirt.