350 S.E.2d 760

**STATE ex rel. Hon. Louis E. LONGANACRE, et al.**

v.

**Paul CRABTREE, etc., and Glen B. Gainer, Jr., etc.**

No. 17265.

Supreme Court of Appeals of West Virginia.

Nov. 20, 1986.

Michael Edward Nogay, Sellitti & Nogay, Weirton, for appellant.

Lucy Norrow Huey, Charleston, for appellees.

MILLER, Chief Justice:

In this original proceeding in mandamus, magistrates from Greenbrier, Hancock, Marshall, and Mingo counties claim that the statute setting their salaries, W.Va. Code, 50-1-3, violates equal protection principles.[1] Under this statute, magistrate salaries are set based on the population served. The population served figure is determined by dividing the number of magistrates authorized in a county into the total population of that county.[2] However, there are created certain pay exceptions within the statute which give higher pay to magistrates in Boone, Preston, Jefferson, Mercer, and Fayette counties.

The magistrates in these counties serve 10,000 or more in population, but less than 15,000 in population and would ordinarily under the statute be paid an annual salary of $20,625. Under the exception, magistrates in Boone, Preston, Jefferson, Mercer and Fayette counties are paid $25,125 annually. Consequently, the relators contend that as they serve the same population per magistrate and receive an annual salary of $20,625, they are being discriminated against for no valid reason.

We have had similar issues presented with regard to the magistrate system in two earlier cases. In *Donaldson v. Gainer*, 170 W.Va. 300, 294 S.E.2d 103 (1982), a group of magistrates filed an original mandamus to compel these same respondents to pay them additional salary. Their claim was based upon population increases that had occurred in their counties, as reflected by the 1980 decennial census. These population increases had the effect of moving the involved magistrates to a higher pay bracket under W.Va.Code, 50-1-2.

The key issue in *Donaldson* was when the pay increases were to be effective. We held they became effective "the next ensuing fiscal year after the census figures were tabulated and published." Syllabus Point 1, in part, *Donaldson*.

We recognized in *Donaldson* that equal protection principles are applicable to a statutory classification based on population, citing the Annotation in 96 A.L.R.3d 538 (1980), and concluded in Syllabus Point 3:

"Where a statutory classification based on population bears no rational relationship to the purposes of the statute, such classification is arbitrary, and violates the constitutional guaranty of equal protection."

However, we declined to determine whether the magistrate pay statute, W.Va.Code, 50-1-3, violated equal protection principles because there was an insufficient factual basis to make that determination.

This unaddressed issue was the subject of the next magistrate suit, *State ex rel. West Virginia Magistrates Ass'n. v. Gainer*, 175 W.Va. 359, 332 S.E.2d 814 (1985), where the contention was made that the population-based, magistrate-pay statute denied equal protection. We concluded

1. W.Va.Code, 50-1-3, provides:

"The salary of each magistrate shall be paid by the State. Beginning on the first day of July, one thousand nine hundred eighty-four, magistrates who serve less than ten thousand in population shall be paid annual salaries of seventeen thousand two hundred fifty dollars; magistrates who serve ten thousand or more in population but less than fifteen thousand in population shall be paid annual salaries of twenty thousand six hundred twenty-five dollars: Provided, That magistrates in the county of Putnam shall be paid annual salaries of twenty thousand six hundred twenty-five dollars. Magistrates who serve fifteen thousand or more in population shall be paid annual salaries of twenty-five thousand one hundred twenty-five dollars: Provided, however, That magistrates in the counties of Boone, Preston, Jefferson, Mercer and Fayette shall be paid annual salaries of twenty-five thousand one hundred twenty-five dollars. For the purpose of determining the population served by each magistrate, the number of magistrates authorized for each county shall be divided into the population of each county. Magistrates shall be paid once a month."

2. The number of magistrates in each county is set by W.Va.Code, 50-1-2, which, subject to certain exceptions, states that in counties of less than 30,000 population, two magistrates; in counties which have more than 30,000, but less than 60,000 population, three magistrates; over 60,000, but less than 105,000 population, four magistrates; more than 105,000, but less than 200,000, seven magistrates; and over 200,000, ten magistrates. The relators involved in this case are magistrates in counties having populations of 30,000 or more, but less than 60,000.

that it did not because there was a rational basis for the classification. This conclusion was based on the fact that the statute provided less pay for magistrates who served fewer people. Statistical data demonstrated that the workload was less on magistrates who served fewer people. Consequently, the lower pay scales for magistrates who served lesser populations were not irrational.

Today's case is more narrowly drawn. It raises the question of whether the legislature may carve out an exception within the same pay classification that enables magistrates in five counties to obtain an additional $4,450 in annual salary. The obvious problem is that all the magistrates involved are serving the same number of people, yet some are paid more than others.

█ The respondent Paul Crabtree, Administrative Director of this Court, argues that the exception is logical since "factors such as the presence of an interstate, dispersed population, high unemployment, high crime rate, topography, adjoining populous counties" would justify the exception. However, we are not informed as to how these general factors favor the five counties, Boone, Preston, Jefferson, Mercer, and Fayette, as against the other counties, Greenbrier, Hancock, Marshall, and Mingo, whose magistrates are in the same population class.[3] There is no statistical data presented as in *Gainer* that would show that the higher paid magistrates do in fact have a heavier workload.

We do not believe that the respondents can justify the exceptions by merely reciting generalized factors by which we determine whether classifications involving economic rights violate equal protection. These factors are from Syllabus Point 7 of *Atchinson v. Erwin*, 172 W.Va. 8, 302 S.E.2d 78 (1983):

"Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 39 of Article VI of the West Virginia Constitution." [4]

*See also Hartstock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 174 W.Va. 538, 328 S.E.2d 144 (1984); *Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327 (1978); *Cimino v. Board of Education*, 158 W.Va. 267, 210 S.E.2d 485 (1974).

In considering our own equal protection principles under Article VI, Section 39 of the West Virginia Constitution,[5] we have obtained guidance from federal cases interpreting the equal protection mandate of the Fourteenth Amendment to the United

3. The argument as to the crime rate seems a bit spurious because this State has had since 1972 the lowest crime rate in the nation. Department of Public Safety, Annual Uniform Crime Report (1985). *See also* Uniform Crime Reports for the United States (1985).

4. We have recognized in a number of cases where an equal protection challenge is made and fundamental or constitutional rights are involved that the State's action is given a stricter scrutiny and the State must advance a compelling State interest to uphold the discriminatory classification. *E.g., Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327 (1978); *State ex rel. Piccirillo v. City of Follansbee*, 160 W.Va. 329, 233 S.E.2d 419 (1977); *Cimino v. Board of Education*, 158 W.Va. 267, 210 S.E.2d 485 (1974).

5. In *Atchinson v. Erwin*, 172 W.Va. at 13, 302 S.E.2d at 83, we determined that Article VI,

Section 39, providing that "in no case shall a special act be passed, where a general law would be proper," formed the basis for our equal protection principle. We pointed out that other jurisdictions had utilized similar constitutional provisions against special legislation to anchor their state equal protection principle. *E.g., State v. Lewis*, 559 P.2d 630 (Alaska 1977); *Anderson v. Wagner*, 79 Ill.2d 295, 37 Ill.Dec. 558, 402 N.E.2d 560 (1979); *Paul Kimball Hospital, Inc. v. Brick Township Hospital, Inc.*, 86 N.J. 429, 432 A.2d 36 (1981). In several of our earlier cases, we referred to the open courts provision of Article III, Section 17 as providing an equal protection component. *E.g., State ex rel. Piccirillo v. City of Follansbee, supra; State ex rel. Payne v. Walden*, 156 W.Va. 60, 190 S.E.2d 770 (1972); *Linger v. Jennings*, 143 W.Va. 57, 99 S.E.2d 740 (1957).

States Constitution which is applicable to state actions.[6] *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981); *State ex rel. Piccirillo v. City of Follansbee*, 160 W.Va. 329, 233 S.E.2d 419 (1977); *Cimino v. Board of Education, supra.* It may also be observed that the United States Supreme Court has recognized that "[a] state court may, of course, apply a more stringent standard of review as a matter of state law under the State's equivalent to the Equal Protection or Due Process Clauses." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461 n. 6, 101 S.Ct. 715, 722 n. 6, 66 L.Ed.2d 659, 667 n. 6 (1981).[7]

In this case, the relators initially have shown that the statute, W.Va.Code, 50–1–3, contains an apparent irrational classification by awarding additional salary to certain magistrates who are serving the same population classification as the other magistrates. However, the respondents do not show any specific facts that would rationally justify this disparate treatment. In many cases there is a legislative history that would indicate the reasons for the classification. *E.g., Minnesota v. Clover Leaf Creamery Co., supra; Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). None of the parties has given us any legislative history here.

In several instances where the statute on its face appears to create an improper classification, in the absence of any legislative history or purpose expressed, we have placed some burden on those supporting the legislation to articulate the reasons that make the statute rational. *E.g., West*

*Virginia Magistrates Ass'n v. Gainer, supra; Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327 (1978); *O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977).

In this case, we are left much in the same posture as New York's highest court in *Weissman v. Evans*, 56 N.Y.2d 458, 452 N.Y.S.2d 864, 438 N.E.2d 397 (1982). There the legislature had permitted two different salary scales to exist for judges in adjoining counties whose workloads and populations were similar. The court, in finding an equal protection violation, remarked that the state in attempting to justify the disparity "is now reduced to reiteration of its position that the territorial distinction . . . [and other general factors] interdicts an equal protection claim." 56 N.Y.2d at 464, 452 N.Y.S.2d at 866, 438 N.E.2d at 399. The lack of any specific rational reason for the pay exception cannot be overcome by recanting the general factors that may be utilized to provide specific rational basis facts and reasons to justify an apparent disparity in the classification.

The present case is analogous to *State ex rel. County Court v. Battle*, 147 W.Va. 841, 131 S.E.2d 730 (1963), where we decided that a judicial pay statute which excluded two judicial officers from a general salary supplement provision in effect violated our equal protection standards, stating in Syllabus Point 4:

"A classification which excludes without any reasonable basis certain public officers who would otherwise be subject to a general law on the same matter is

---

6. The pertinent portion of the Fourteenth Amendment is: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." The Fourteenth Amendment is applicable to the states. There is no express equal protection provision applicable to the federal government in the federal constitution. The United States Supreme Court has found that the due process clause of the Fifth Amendment to the United States Constitution includes an equal protection component applicable to the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *see Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2, 95

S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514, 519 n. 2 (1975).

7. The Supreme Court cited the following authorities for its statement. *Baker v. City of Fairbanks*, 471 P.2d 386, 387, 401–02 (Alaska 1970); *Serrano v. Priest*, 18 Cal.3d 728, 764–65, 135 Cal.Rptr. 345, 366–67, 557 P.2d 929, 950–51 (1976), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2951, 53 L.Ed.2d 1079 (1977); *State v. Kaluna*, 55 Hawaii 361, 368–69, 520 P.2d 51, 58–59 (1974); *see* Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv.L.Rev. 489 (1977).

arbitrary and violative of the constitutional provisions forbidding special laws where a general law is required or would be proper."

In *Battle*, the challenged statute provided a two-tier pay classification for circuit judges based on population. It further provided that county commissions could supplement the salaries not to exceed twenty thousand dollars a year. There was a provision, however, that limited the salary supplement in Wyoming County to $1,500 and in Cabell County to $2,000. We found these latter limitations to be unconstitutional.

The present case is similar except that here additional salaries are authorized rather than diminished salaries as in *Battle*. However, an obvious discriminatory pattern underlies both schemes.

■ We, therefore, conclude that W.Va. Code, 50-1-3, to the extent it provides an exception permitting increased salaries for magistrates in five counties as against magistrates who are in counties with the same general population per magistrate, violates equal protection concepts.

■ In making this determination, we are mindful that under Article VIII, Section 7 which provides in relevant part that "Justices, judges and magistrates shall receive the salaries fixed by law, ... which may be increased but shall not be diminished during their term of office." This constitutional provision precludes our reducing the salaries of the magistrates who receive the additional salary increment.

In the past when we have been confronted with public pay disputes that offend some constitutional principle, we have on occasion given the legislature a reasonable period to correct the deficiency. In essence, we have stayed our final order to accommodate a legislative solution. For example, in *State ex rel. Partain v. Oakley*, 159 W.Va. 805, 227 S.E.2d 314 (1976), we determined that the statutory fees paid to attorneys who represented indigent criminal defendants were so low that in certain circumstances the fees would be unconstitutional. We outlined several approaches that the legislature might take to resolve this problem and stayed entry of our order for a period of time to enable the legislature to pass corrective legislation.[8] This is in accord with our policy of adopting the least intrusive remedy in determining a statute to be unconstitutional. *E.g., Don S. Co., Inc. v. Roach*, 168 W.Va. 605, 613, 285 S.E.2d 491, 496 (1981); *State ex rel. Whitman v. Fox*, 166 W.Va. 633, 642–43, 236 S.E.2d 565, 571 (1977); *State ex rel. Alsop v. McCartney*, 159 W.Va. 829, 838–40, 228 S.E.2d 278, 283–84 (1976).

We, therefore, determine that in view of the unconstitutionality of the magistrate pay provision in W.Va.Code, 50-1-3, the legislature should take corrective measures to revise this statute. We will defer entry of a final order in this matter until sixty days following the adjournment of the next regular legislative session.

Writ granted as moulded.

■

8. Syllabus Point 4 of *Partain* provides:
"In the interest of justice, to protect the rights of indigent persons charged with crime and to assure that the attorneys of this State will not be subjected to an unconstitutional taking of their time and financial resources, in the absence of legislative action to establish a system of providing counsel for indigent defendants which adequately protects these interests, the Court will, on July 1, 1977, order that the lawyers of this State may no longer be required to accept appointments as in the past."