**HILLMAN FLYING SERVICE, INC., Plaintiff,**

v.

**The CITY OF ROANOKE, et al., Defendants.**

**Civ. A. No. 85–1107–R.**

United States District Court, W.D. Virginia, Roanoke Division.

Jan. 21, 1987.

**2.** After this opinion had already been prepared, this Court received a February 19 letter from plaintiffs' counsel requesting "permission to file a response to the defense position seasonably [ ] after" plaintiffs' principal attorney completes a trial now in progress. However, the context in which the issue is before this Court—a motion for partial summary judgment, with all precincts having been heard from in terms of the *evidence* to be considered in deciding the motion—does not call for further input from counsel. There either is or is not a genuine issue of material fact on the Section 155 claims, and the Opinion had already made clear how that question was to be resolved. Accordingly the request is denied.

S. Strother Smith, III, Abingdon, Va., for plaintiff.

James F. Johnson, Mark Williams, City Atty., Roanoke, Va., Tony Troy, Mays, Valentine Law Offices, Richmond, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

The plaintiff, Hillman Flying Service, Inc. ("Hillman") has sued the City of Roanoke, four of its officers,[1] Piedmont Aviation, Inc. ("Piedmont") and one of Piedmont's vice presidents. Hillman complains that the defendants have conspired to prevent it from selling aviation fuel at the Roanoke Regional Airport and have thereby violated Hillman's rights under the United States Constitution, Federal antitrust statutes, and Virginia statutes. Defendants James G. Harvey II, Jack C. Smith, Claude Smith, and Robert C. Poole, and the

City of Roanoke (collectively "the municipal defendants") move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the Amended Complaint filed on May 6, 1986. The court finds that the allegations of the complaint clearly demonstrate that Hillman has no claim upon which relief can be granted. Accordingly, the court will dismiss the complaint as to the municipal defendants.

## BACKGROUND

Hillman leases premises from Roanoke City and runs a fixed based operation[2] ("FBO") at Roanoke Regional Airport. As owner and operator of the airport, the City is responsible for enacting and enforcing state standards for controlling airports and aviation. Among those rules are regulations covering fixed based operations and minimum space requirements governing vendors of aviation fuel. *See Roanoke, Va., Code,* §§ 4–40, 4–47, 4–53, 4–54 (1979). Hillman has been frustrated in its attempts to become an aviation fuel vendor at the airport.

Hillman's most recent complaint, its fourth in this case, alleges that the city and its officials have illegally construed the city code to preclude any business except for Piedmont from selling aviation fuel at the airport. Indeed, Piedmont currently is the sole aviation fuel vendor at the airport. It further alleges that the city's official actions concerning the airport are the result of an illicit conspiracy between Piedmont and the city. The entire complaint is infused with very serious charges of bribery, strong arm tactics, and impropriety by the defendants. It specifies a lion's share of federal and state rights that the municipal defendants ostensibly have violated by their behavior.

Count I alleges an illegal conspiracy in restraint of trade in violation of the Sher-

---

1. Defendant Harvey is a member of the Roanoke City Council. Defendants Smith, and Smith are members of the Roanoke Airport Advisory Commission. Defendant Poole is the manager of Roanoke Regional Airport.

2. Fixed based operations are the aviation industry functional equivalent of service stations. They repair and store aircraft, rent planes, and in some cases, sell fuel. *See Roanoke, Va., Code* § 4–45 (1979).

man Act. 15 U.S.C. § 1 (1982). Counts II and III charge an illegal monopoly and an illegal attempt to monopolize, respectively. 15 U.S.C. § 2. Count IV is a RICO claim from which the municipal defendants are excluded. Count V is brought under 42 U.S.C. § 1983 and alleges violations of Hillman's constitutional rights of free speech, due process, and equal protection, as well as its statutory rights under Federal aviation law. 49 U.S.C. § 2210(a). Count VI and VII are grounded in state statutes and allege violations of the Virginia's Antitrust Act, *Va.Code* §§ 59.1–9.5–9.7, and Virginia's Conspiracy Act, *Va.Code* § 18.2–499, 2–500.

The municipal defendants contend that Hillman's suit against them is groundless. They maintain that they are immune from antitrust liability by virtue of the so-called state action doctrine and the Local Government Antitrust Act. 15 U.S.C. §§ 34–36 (1984). They further assert that the claims under 42 U.S.C. § 1983 are fatally deficient because Hillman fails to demonstrate the violation of any legitimate constitutional or statutory Federal right. Relying on its contention that Hillman has presented no cognizable Federal claim, the municipal defendants finally argue that the court must dismiss the pendent state claims.

The parties argued their motions at a court hearing on June 25, 1986. The Piedmont defendants have not joined in the motions to dismiss. They currently are participating in discovery with the plaintiff.

## DISCUSSION

I. *The Municipal Defendants are Immune from Antitrust Liability*

a. *State Action Immunity*

The state action doctrine is a judicial creation that immunizes municipalities from liability under the antitrust laws. The Supreme Court developed the doctrine because of its concern for federalism and because of the absence of any evidence that Congress intended the antitrust laws to extend to the behavior of state and municipal governments. *Parker v. Brown,*

317 U.S. 341, 350–51, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943). To obtain state action immunity "municipalities must demonstrate that their anticompetitive activities were authorized by the state 'pursuant to state policy to displace competition with regulation or monopoly public service.' " *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 39, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985) (*quoting City of Lafayette v. Louisiana Power and Light Co.,* 435 U.S. 389, 413, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978)); *Coastal Neuro Psych. v. Onslow Mem. Hosp.,* 795 F.2d 340, 341 (4th Cir.1986). Yet, a state's authorization of anticompetitive conduct need not be explicit. The Supreme Court's most recent refinement of the state action doctrine protects municipalities from antitrust liability in any case in which the city's anticompetitive behavior "logically would result from the broad authority to regulate granted by the state." *Town of Hallie,* 471 U.S. at 42, 105 S.Ct. at 1718. For example, the United States Court of Appeals for the Fourth Circuit recently granted antitrust immunity to a North Carolina county hospital which denied certain doctors access to its CAT scan equipment. *Coastal Neuro, supra.* The court found that the hospital was immune even though it operated under a broad and unspecific state grant of authority to construct, operate, and maintain hospitals. *Id.* at 341–42.

The City of Roanoke derives its authority to operate the airport from *Va.Code* § 5.1–31. That section grants Virginia municipalities the general authority to "acquire, construct, maintain, and operate airports and related structures, properties and facilities." *Va.Code* § 5.1–31 (1983). Unlike the aviation laws of other states, the Virginia law does not expressly anticipate exclusive or anticompetitive arrangements. *Compare Id.* with *N.Y.Gen.Mun.Law* § 352 (McKinney 1974 & Supp. 1984–85) (granting local bodies authority to lease airports on an exclusive basis). Nonetheless, a legislature's express endorsement of anticompetitive behavior is unnecessary for a municipality's immunity under

the antitrust laws. Indeed, the state action doctrine realistically anticipates that anticompetitive results are often foreseeable when a political subdivision implements a state grant of general authority to act efficiently and in the best public interest. *See, Cine 42nd Street Theatre Corp. v. Nederlander Org.*, 790 F.2d 1032, 1047 (2d Cir. 1986).

It is foreseeable that anticompetitive effects can result from Virginia's grant of authority to municipalities to operate and regulate airports "for a public purpose" and to lease airport facilities to private operators. *Va.Code* §§ 5.1-3, 5.1-33, 5.1-40. The space and resources that a municipality can devote to an airport are limited. To serve the flying public most effectively, a city should be free to establish standards that ensure that only the most efficient and safest contractors are granted operating rights at its airport.

Similarly, the various Roanoke ordinances that establish the Airport Advisory Commission, that empower the city to contract for airport services and that establish mandatory guidelines for aviation fuel vendors further the broad but less specific authority set out in Virginia's aviation statutes. By granting cities the power to regulate airport facilities "on such terms and subject to such conditions and regulations as may be provided," *Va.Code* § 5.1-40, the Virginia legislature limited the free-market for aviation businesses. The anticompetitive effects for which Hillman is suing the city are the foreseeable, and perhaps necessary, result of Roanoke's implementation of its statutory authority to impose regulations to make the most efficient and cost effective air service available to the public. The court holds therefore that the state action immunity protects the municipal defendants from antitrust liability in this case.

*b. Damages Immunity under the Local Government Antitrust Act.*

■ The Local Government Antitrust Act ("LGAA") provides that:

No damages, interest on damages, costs, or attorney's fees may be recovered under section 4, 4A or 4C of the Clayton Act (15 U.S.C. Sections 15, 15a or 15c) from any local government, or official or employee thereof acting in an official capacity. 15 U.S.C. § 35(a) (1984).

Similar in effect to the state action doctrine, the LGAA aims to bar antitrust damage awards against cities even when they act without specific or affirmative grants of state authority. *H.R.Rep. No.* 98–965, 98th Cong., 2d Sess. 2 (1984), *reprinted in,* 1984 *U.S.Code Cong. & Ad.News* 4602, 4603. Hillman's counsel argues that the LGAA should not apply in this case because the municipal defendants were not acting in an official capacity when they enacted and enforced the regulations at issue. The court is unconvinced by this argument. It is clearly within the official capacity of a city council to pass ordinances and for city officials and advisors to enforce them.

In light of Congress' desire to grant broad immunity from noncriminal acts by local officials and the broad authority that Virginia grants to municipalities to operate local airports, Hillman has failed to state a claim upon which relief can be granted under the Clayton Act for damages against the municipal defendants. *Montauk Caribbean Airways, Inc. v. Hope,* 784 F.2d 91 95 (2d Cir., *cert. denied*), — U.S. —, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986). The LGAA bars such a claim. *Id.*

Because the court holds that Hillman's antitrust claims against the municipal defendants are barred a a matter of law, it is unnecessary for the court to consider the substance of those claims.

II. *Claims Under 42 U.S.C. § 1983.*

Hillman next complains that the municipal defendants have violated several federal constitutional and statutory rights that give rise to civil rights claims under 42 U.S.C. § 1983.

### a. Equal Protection

■ Hillman first charges that Roanoke's minimum space requirements for aviation fuel vendors violate the equal protection clause of the 14th amendment. *See Roanoke, Va., Code* 4–53 (1979).

■ When economic or commercial legislation is challenged under the equal protection clause, the state defendant needs only to demonstrate that the regulation is rationally related to a legitimate state interest. *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam). Unlike cases in which a challenged statute implicates a suspect classification or a fundamental right, when a case involves a local economic regulation courts must defer to legislative determinations. *Id.* The only avenue for the court's inquiry in such a case is whether there is a rational relationship between the local legislature's economic concerns and its decision to exclude or discriminate against certain economic interests. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 500 (1976) (per curiam). Otherwise, local economic regulations are presumed valid. *Id.*

The City of Roanoke controls the operation of the airport pursuant to the authority conferred by the State of Virginia. *Va. Code* § 5.1–31. It is incontestable that maintaining safe and efficient public airports is a legitimate government interest of the state and its political subdivisions. To further that interest, Roanoke necessarily must pass and enforce regulations that guarantee the safety and commercial viability of its airport. If the city has decided rationally that minimum space requirements for aviation fuel vendors serve its legitimate interest in maintaining the airport, the court must defer to that decision. *Dukes,* 427 U.S. at 303, 96 S.Ct. at 2516.

■ Hillman's further contention, that Roanoke's aviation fuel standards are more restrictive than safety and efficiency require, is insufficient to allow the court to scrutinize the airport regulations more strictly than under a rational basis analysis. Although it is true that legislation involving fundamental rights or suspect classifications must further its purpose in the least restrictive manner, economic legislation can accomplish its goal in broad strokes. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). So long as the government can demonstrate any reasonably conceived justification, economic legislation will pass constitutional muster even if the classification it sets out are imperfectly suited to achieve the law's purpose. *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959). The court, therefore, is bound to accept the municipal defendants's argument that the overbreadth of their aviation fuel standards are attributable to the high degree of danger associated with air travel. The court is persuaded that it is rational for the city to err on the side of caution by promulgating broad minimum requirements for its airport contractors. In a field in which even a slight mistake can result in catastrophic human costs, it would be far less rational for the city to adopt standards with a narrow margin of error. *See Hill Aircraft & Leasing Corp. v. Fulton County,* 561 F.Supp. 667, 679 n. 10 (N.D.Ga. 1982), *aff'd,* 729 F.2d 1467 (11th Cir.1984).

The municipal defendants have sufficiently demonstrated that their standards for aviation fuel vendors at Roanoke Regional Airport are rationally related to the legitimate interest to safely and efficiently provide public aviation services. The court therefore holds as a matter of law that Hillman's complaint fails to demonstrate that the municipal defendants have violated its right to equal protection under the fourteenth amendment.

### b. Procedural Due Process

■ As its next ground for recovery, Hillman alleges that the municipal defendants denied it a property interest without due process as guaranteed by the Fourteenth Amendment. Hillman asserts that it has a protected property interest in the

right to sell aviation fuel and that the municipal defendants have unfairly administered their duties to deprive Hillman of that right.

■ When examining an alleged procedural due process violation the court employs a two tiered inquiry. As a starting point, it must determine whether a state or local law affords the plaintiff a protectable property interest or entitlement. *Scott v. Greenville County*, 716 F.2d 1409, 1418 (4th Cir.1983). If it finds a potectable property interest, the court must then determine whether its deprivation was attended by notice and an opportunity to be heard— the minimum procedural safeguards required by constitutional due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Depending on the context, the notice and hearing requirements may necessitate protections such as the assistance of counsel, presentation of evidence, and cross-examination. *Goldberg v. Kelly*, 397 U.S. 254, 268–71, 90 S.Ct. 1011, 1020–22, 25 L.Ed.2d 287 (1970).

■ The property interest that due process protects can be either an actual property right, e.g. *Yates v. Jamison*, 782 F.2d 1182 (4th Cir.1986) (house destroyed by city without prior notice), or an entitlement—an expectancy of obtaining some right or interest in the future. *Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Due process protection does not, however, extend to all expectations of future rights. A claim of entitlement receives constitutional protection only when it is based on the provisions of a state or local regulation or upon an express contract or mutual understanding with the defendant. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A plaintiff's abstract need, desire, or unilateral expectation is insufficient to sustain a procedural due process claim. *Id.; Gold Cross Ambulance and Transfer v. City of*

*Kansas City*, 705 F.2d 1005, 1016–17 (8th Cir.1983), *cert. denied*, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985).

Hillman concedes that it has no current property right in aviation fuel sales. It bases its procedural due process claim on its view that section 4–45 of the Roanoke City Code grants it a future entitlement to an aviation fuel business at the airport. Section 4–45, however, confers no such entitlement. All that section 4–45 does is to establish two categories of FBO's and set out the permissible activities of each. *See Roanoke, Va., Code, § 4–45.* It neither authorizes the licensing of FBO's nor requires the city to confer FBO status on all businesses that desire it. Nothing in section 4–45 could justify Hillman's claim that the ordinance is an entitlement granting every fixed based operator at the airport the right to sell fuel. Hillman, therefore, has failed to demonstrate a state property right subject to the procedural guarantees of the due process clause.

Having found that section 4–45 confers no constitutionally protected right, it is unnecessary for the court to determine whether the municipal defendants followed proper constitutional processes in applying it. Hillman's procedural due process claim must therefore be dismissed.

c. *Statutory Rights Under Federal Aviation Law*

■ Hillman next contends that the municipal defendants violated the rights it enjoys under the Federal Airport and Airway Improvement Act of 1982 ("the Act") 49 U.S.C. § 2210(a). The defendants argue that the court must dismiss this part of the complaint because the Act confers no private right of action.

■ To determine whether a federal statute provides a private right of action enforceable under section 1983, a court must make two inquiries: 1) whether Congress in enacting the statute had foreclosed private enforcement; and 2) whether the statute is of the kind that creates enforcable rights under Section 1983. *Middlesex*

*County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981).

Section 2210 requires that airport proprietors receiving federal funds must make their facilities available to the public on fair and reasonable terms and without unjust discrimination. 49 U.S.C. § 2210 (1986). Neither the Act itself nor its legislative history manifests an explicit congressional intention to deny private enforcement. There is evidence, however, that Congress intended the federal government to be primarily responsible for enforcing the Act. *See* S.Rep. No. 494, Vol. 2, 97th Cong., 2d Sess. 34, *reprinted in,* 1982 *U.S.Code Cong. & Ad.News* 781, 1185. Furthermore, the statute does not indicate that Congress intended to create a right enforceable through section 1983. *Arrow Airways, Inc. v. Dade County,* 749 F.2d 1489, 1491 (11th Cir.1985). The statute charges the Secretary of Transportation, not private parties, with implementing and enforcing its comprehensive regulatory scheme. 49 U.S.C. § 2210. Section 2210(a) confers no express or implied right of a kind that could serve as a basis for private action under section 1983. *Arrow, supra,* 749 F.2d at 1491. The court will therefore dismiss Hillman's claim against the municipal defendants for alleged violations of the Federal Airport and Airway Improvement Act of 1982.

*d. Rights Under the First Amendment.*

 The plaintiff's final federal claim under section 1983 is that the municipal defendants violated its first amendment rights by seeking to enjoin it from advertising the sale of aviation fuel.

 Commercial speech, which encompasses business advertising, receives only limited first amendment protection. Truthful commercial speech is constitutionally protected but may be narrowly restricted in furtherance of substantial government interests. *Posadas de Puerto Rico Assoc. v. Tourism Co., of Puerto Rico Assoc.* —— U.S. ——, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986). Commercial speech that is false or misleading or that concerns unlawful activity receives no first amendment protection. *Central Hudson Gas & Elec. v. Public Serv. Comm'n,* 447 U.S. 557, 563–65, 100 S.Ct. 2343, 2350–51, 65 L.Ed.2d 341 (1980).

At the time of Hillman's advertisement, it could not legally have sold aviation fuel because it did not meet the requisite space requirements under the Roanoke City Code. *Roanoke, Va., Code* § 4–53 (1979). Its advertisement for aviation fuel was a proposal of an illegal transaction and a form of commercial speech that the first amendment does not protect. *See Pittsburgh Press Co. v. Human Relations Comm'n,* 413 U.S. 376, 389, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973). Thus, the court will dismiss plaintiff's cause of action under the first amendment.[3]

III. *Pendent State Claims*

 Hillman finally alleges that the municipal defendants have violated the Virginia Antitrust Act, *Va.Code* §§ 59.1–9.1–9.8, and the Virginia Business Conspiracy Act, *Va.Code* § 18.2–499–2–500. Hillman argues that the court may consider these state claims by exercising its pendent jurisdiction. However, in light of the fact that the court has dismissed all of th federal counts and that no independent basis for federal jurisdiction remains for claims against the municipal defendants, the court will dismiss the two state statutory claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

**CONCLUSION**

The court concludes that Hillman Flying Service, Inc. has failed to state any claim

---

**3.** Because the court holds that there are no valid civil rights claims here, it is unnecessary for the court to consider at length Hillman's claim for punitive damages under section 1983. Nonetheless, the court does recognize that punitive damages are never available in section 1983 suits against municipal defendants. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981).

**1150**

against the five municipal defendants for which relief can be granted. Accordingly, it will dismiss Hillman's complaint against the five municipal defendants.

An order consistent with this opinion will be entered on this day.