377 S.E.2d 648

**STATE of West Virginia ex rel. James D. MOODY and Sharon Seckman**

v.

**Glen B. GAINER, Auditor, and Paul Crabtree, Administrative Director of the Supreme Court of Appeals.**

No. 18450.

Supreme Court of Appeals of West Virginia.

Dec. 9, 1988.

James T. Kratovil, Kratovil & Kratovil, Weston, for petitioners.

Bowles, McDavid, Graff, & Love, Charleston, for Crabtree.

BROTHERTON, Justice:

This proceeding in mandamus was filed by the magistrates from Lewis County alleging that the statute which sets their salaries, W.Va.Code § 50–1–3, violates the Equal Protection principles of both the United States and West Virginia Constitutions. *West Virginia Code* § 50–1–3 (1988) provides that magistrates serving populations of 10,000 or less be paid a salary of $19,000, while magistrates serving 10,000 to less than 15,000 in population and those serving 15,000 or more both receive $25,-125.[1] For purposes of determining the population served by each magistrate, the population of the county shall be divided by the number of magistrates authorized for that county.[2]

The petitioners admit that Lewis County has a population of 18,813 and two magis-

trates, and thus, each magistrate is paid $19,000. However, they contend that they "handle" as many or more cases than the larger population counties where the magistrates receive the higher salary. For that reason, the petitioners argue that the compensation system of W.Va.Code § 50–1–3 (1988) is arbitrary and does not bear a rational relationship to the purposes of the statute.

We have addressed this issue and other issues relating to the magistrate salary system on several occasions. In *Donaldson v. Gainer*, 170 W.Va. 300, 294 S.E.2d 103 (1982), the plaintiffs, a group of magistrates and staff personnel, raised a constitutional challenge to the compensation system set forth in W.Va.Code § 50–1–3 (1981), and alleged they were entitled to additional pay due to an increase in county population. Although we concluded that a statutory classification based on population would violate the constitutional guarantee of equal protection if it bore no rational relation to the statutory purpose, we declined to determine if W.Va.Code § 50–1–3 (1981) violated those principles because of insufficient evidence. The magistrates were, however, granted salary increases based on the increased population effective the beginning of the next fiscal year.

The issue was next raised in *State ex rel. the West Virginia Magistrates Association v. Gainer*, 175 W.Va. 359, 332 S.E.2d 814 (1985). The Magistrates Association specifically challenged the constitutionality of the population-based compensation statute. After analyzing the 1983 Annual Report on Magistrate Activity, we noted the disparity in judicial functions between the small and large county magistrates. We found that the basis for the legislative clas-

---

1. Effective January 1, 1989, the Legislature has provided that magistrate salaries be increased to $20,625 for the magistrates who serve populations of less than 10,000 and to $27,000 for those who serve populations of 10,000 or more. W.Va.Code § 50–1–3 (1988).

2. West Virginia Code § 50–1–3 (1988) provides, in part:
   The salary of each magistrate shall be paid by the state. Beginning on the first day of July, one thousand nine hundred eighty-seven, magistrates who serve less than ten thousand in population shall be paid annual salaries of nineteen thousand dollars; magistrates who serve ten thousand or more in population but less than fifteen thousand in population shall be paid annual salaries of twenty-five thousand one hundred twenty-five dollars. Magistrates who serve fifteen thousand or more in population shall be paid annual salaries of twenty-five thousand one hundred twenty-five dollars. . . .

sification was not "wholly irrelevant" to the achievement of the State's objective. We therefore concluded that the population-based system of *W.Va.Code* § 50-1-3 (1984) did not violate Equal Protection principles. *Id.* 175 W.Va. at 362, 332 S.E.2d at 816, 818.

The final case, *State ex rel. Longanacre v. Crabtree,* 177 W.Va. 132, 350 S.E.2d 760 (1986), dealt with the remaining issue of whether the legislature could carve out exceptions to the salary system within the same population classification. We concluded that the section of W.Va.Code § 50-1-3 which created salary exceptions within the same population category violated equal protection concepts. Further, we noted the respondents failed to show any specific facts or present any legislative history which would provide a rational basis for the classification.[3] The legislature was then allowed time in which to correct the problem. The result was the 1987 amended version of W.Va.Code § 50-1-3 (1987), which provides for only two salary classifications without individual exceptions.[4]

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." It has been established that Art. VI, sec. 39 of the West Virginia Constitution parallels the equal protection guarantee of the Fourteenth Amendment. *Donaldson,* 170 W.Va. at 306, 294 S.E.2d at 108; *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977). Thus, the issue on appeal is whether the plaintiffs' economic equal protection rights have been violated by § 50-1-3 of the West Virginia Code which authorizes a salary commensurate with the smaller county magistrates while "handling" as many or more cases than magistrates in some of the larger counties.

The equal protection standard which governs economic classifications was set forth in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). In *McGowan,* the United States Supreme Court held that the Fourteenth Amendment permitted the states a wide scope of discretion in enacting laws which treated groups of citizens differently. Specifically, the Court ruled that:

> The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

366 U.S. at 425-26, 81 S.Ct. at 1105, 6 L.Ed.2d at 399 (citations omitted). Further, in *State ex rel. Heck's v. Gates, et al.,* 149 W.Va. 421, 141 S.E.2d 369 (1965) at syllabus point 8, we reiterated that "[t]he well settled general rule is that in cases of doubt the intent of the Legislature not to exceed its constitutional powers is to be presumed and the courts are required to favor the construction which would consider a statute to be a general law."[5]

■ West Virginia has consistently recognized the rational basis standard as the test for a violation of economic equal protection precepts. In *Atchinson v. Erwin,* 172 W.Va. 8, 302 S.E.2d 78 (1983), we defined the standard for analyzing economic equal protection questions. We stated that:

> Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated

---

**3.** *See Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).

**4.** While the amendments to W.Va.Code § 50-1-3 (1987) corrected the problems addressed in *Longanacre,* a new problem was created. Section 50-1-3 now provides for only two salary classifications while three population tiers are identified. This issue is addressed in footnote 9.

**5.** *See also State ex rel. the West Virginia Magistrates Association, supra,* 175 W.Va. at 361, 332 S.E.2d at 816.

equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 39 of Article VI of the West Virginia Constitution.

(citations omitted). 172 W.Va. at 14, 302 S.E.2d at 84.

The present case is simply a more narrowly drawn version of the issues previously decided. The plaintiffs allege *W.Va. Code* § 50–1–3 (1988) violates equal protection principles only as it applies to them, and pray for a salary commensurate with the larger county magistrates. The plaintiffs base their premise on the amount of cases "handled" as compared to selected larger counties.

■ The plaintiffs' argument, however, ignores a fundamental problem. Regardless of the cases handled, it is undisputed that the Lewis County magistrates each serve a population of less than 10,000. The statute bases the salary distinction on whether the population served is more or less than 10,000 per magistrate. The standard articulated in *McGowan* and *Atchinson* requires only that the classification be a rational one. We previously held in the *West Virginia Magistrates Association* decision that the population-based compensation system was not wholly irrelevant to the achievement of the State's goal and thus, did not violate equal protection principles. Although the statistics presented by the plaintiffs reveal that Lewis County was the busiest of the smaller counties, the figures also demonstrate that as a group, the larger county magistrates handled a case load over two times greater than the smaller county magistrates.[6] The plaintiffs' evidence does not persuade us that the population-based system is irrational or arbitrary.[7]

The plaintiffs' contention that their equal protection rights were violated by the population-based compensation system of W.Va. Code § 50–1–3 (1988) fits squarely within the parameters set in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). In *Dandridge*, the United States Supreme Court held that the equal protection clause was not violated by imperfect classifications. The Court held that "[i]f the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" (citations omitted). 397 U.S. at 485, 90 S.Ct. at 1161, 25 L.Ed.2d at 501–02.

A similar conclusion was reached by the United States District Court for the Western District of Virginia in *Hillman Flying Service, Inc. v. City of Roanoke*, 652 F.Supp. 1142 (W.D.Va.1987). The court stated that if a classification had a reasonable basis, the constitutionality of the economic legislation would be upheld even if imperfectly suited to achieving the State's purpose. 652 F.Supp. at 1147.

This Court is not unmindful of the disparity of this situation. However, the economic reality that the plaintiffs, by statistics, "handle" more total cases than some of their fellow magistrates does not defeat the rationality or, ultimately, the constitutionality of the statute. We base our decision on the fact that the population-based system chosen by the Legislature, while perhaps imperfect, is a rational method to determine salaries.[8] We do believe that there may be unfairness in the present system, but our duty is to determine the constitutionality of the statute—only the Legislature can change the system of compensation.

As written, the population-based compensation system survives the rational basis standard articulated in *McGowan, Dandridge* and *Atchinson, supra*. The facts

---

6. *See* Exhibits A–L.

7. *See also Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam).

8. We note that the population-based system is also an efficient method to determine salary. If salary was determined according to the number of cases filed, the salary could change from month to month and require constant monitoring. Moreover, such a system would be ripe for abuse within the system wherein citations or filings were encouraged for the purpose of increasing the workload and ultimately, the paycheck.

and the statistics are insufficient to persuade us that W.Va.Code § 50–1–3 (1988), as a whole, violates equal protection principles. In light of the presumption of constitutionality accorded to the legislature by the United States Supreme Court in *McGowan* and our ruling in *Heck's*, we cannot find the population-based system of compensation unconstitutional. Although we agree that the population-based system creates a disparity in this case, we cannot correct the inequity where the system is constitutionally sound.[9] Any alteration to the compensation system is within the province of the legislature.

Writ denied.

**9.** However, we do find it inconsistent that W.Va. Code § 50–1–3 (1988) provides for only two salary classifications despite the identification of three population classes. If the magistrate salary system is rationally based upon the population served and the ensuing workload, then it follows that the magistrates serving the largest population group should receive the highest salary. We note, however, that the issue will be moot as the legislature corrected the statute, effective January 1, 1989, by raising the two salary levels while reducing the number of population-based classifications to two.