365 S.E.2d 387

**SUMMERS COUNTY EDUCATION ASSOCIATION, Kayetta Meadows, President,**

v.

**SUMMERS COUNTY BOARD OF EDU-CATION; James A. Doyle, et al., Members; and Ametrius E. Tassos, Superintendent.**

No. 17625.

Supreme Court of Appeals of West Virginia.

Nov. 17, 1987.

Dissenting Opinion Feb. 9, 1988.

**108**

William B. McGinley, Charleston, for Summers Cty. Educ. Assoc.

David L. Parmer, Hinton, for Summers Cty. Bd. of Educ.

BROTHERTON, Justice:

This is an appeal from a declaratory judgment of the Circuit Court of Summers County. The appellant is a professional association representing employees of the Summers County Board of Education (hereinafter "the association"). The association sued the Board of Education, its individual members, and the superintendent of schools[1] in circuit court for reinstatement of county salary supplements after defeat of special excess levy referenda in February and April, 1982. The circuit court ruled in favor of the Board of Education, and the association appeals. For the reasons set out below, we affirm the judgment of the circuit court.

Prior to the 1982–83 school year, the Summers County Board of Education paid its employees a salary supplement funded by an excess levy that had been in effect for five years. The supplement added $100 per month to each teacher's salary, and $35 per month to the salaries of service personnel. On February 9, 1982, the voters refused a proposed 100% excess levy to be in effect for five years, and on April 12 of the same year they voted down an 85% excess levy to continue for three years. Both

excess levies included funds earmarked for salary supplements of $125 per month for teachers, and $60 per month for other personnel. After the April election, the Board of Education implemented a budget which excluded all county salary supplements, and provided only the salaries required by the State minimum salary schedules set out in W.Va.Code §§ 18A–4–2 (1984) and 18A–4–8a (1984). From the 1982 school year to the present, no employee of the Summers County Board of Education has received a county salary supplement, and no excess levy has been proposed since that date.

The association's primary contention is that W.Va.Code § 18A–4–5 must be read together with Code § 18–9B–8 (1984) to create a mandatory prioritization of items that a school board must follow in making budget cuts. The association asserts that if the school board had followed the priorities set out in § 18–9B–8, there would have been money to fund salary supplements in some or all of the years since 1982. The school board disputes both the appellant's interpretation of the statutes and its interpretation of the school's financial information.

Article 4 of chapter 18A governs the salaries, wages and other benefits provided to school personnel. Section 18A–4–2 sets State minimum salaries. Section 18A–4–5 governs the authority of county school boards in fixing the salaries of teachers. It requires county boards of education to use the minimum salaries established in § 18A–4–2, and allows the county boards to establish higher local salary schedules as long as they are uniform. It then says:

> Provided, that in establishing such local salary schedules, no county, from the effective date of this act [July 1, 1969], shall reduce local funds allocated for instructional salaries and used in supplementing the state mandated salaries as provided for in this article, unless forced to do so by failure of a special levy, or a

1. For convenience, the appellees are referred to collectively in this opinion as "the Board of Education," or "the Board."

loss in assessed values, or state aid, or events over which it has no control.[2]

The Legislature in this proviso anticipated the situation in which Summers County finds itself, and expressly allowed school boards to discontinue salary supplements funded by local excess levies when "forced to do so by failure of a special levy."

The other Code section that the appellants seek to insert into this controversy is W.Va.Code § 18–9B–8. This section relates to actions by the State Board of School Finance, and seeks to protect school personnel when a county is considering reducing the number of work days ("the employment term") in order to save money. The preceding section, § 18–9B–7, prohibits the State Board of School Finance from approving a budget which provides for less than the full employment term, unless the county school board files a petition showing that the best interests of the schools will be promoted by using available funds for purposes other than maintenance of the maximum employment term. Section 18–9B–8 provides:

*If the board of finance finds that the proposed budget for a county willnot maintain the schools for the employment term,* it may require that the budget be revised so as to provide as much of the employment term as possible; but in no case shall permit the reduction of the instructional term. Any required revision in the budget for this purpose may be made in the following order:

(1) Postpone expenditures for permanent improvements and capital outlays except from the permanent improvement fund;

(2) Reduce the amount budgeted for maintenance exclusive of service personnel so as to guarantee the payment of salaries for the employment term;

(3) Reduce the number of noninstructional days;

(4) Reduce the amount of salary paid in excess of that fixed by [§ 18–7–2];

(5) Adjust amounts budgeted in any other way so as to assure the required instructional term of 180 days under the applicable provisions of law.

(emphasis added). This provision addresses a situation in which a school board prepares a budget that contemplates cutting work days from the full school schedule. Specifically, § 18–9B–8 does not apply unless "the Board of Finance finds that the proposed budget for a county will not maintain the schools for the employment term."

The Summers County Board of Education did not submit a budget based on a reduced employment term, and the Board of Finance accordingly did not make the kind of finding that would invoke the provisions of § 18–9B–8. Based on the plain language of the two Code sections cited, we find that a county board of education may discontinue local salary supplements to teachers and other personnel when forced to do so by failure of a special levy. Section 18–9B–8 does not apply to such a situation absent additional facts not present on the record in this case.

■ The association also asserts that discontinuance of the salary supplements was arbitrary and capricious because the School Board had sufficient excess funds each year to pay the salary supplement, which funds it applied to capital improvements and other expenses.[3] The appellees take exception to the association's facts and figures. The Board's audited financial statements show deficits in two of the years cited by the association, and much smaller budget surpluses than those claimed by the appellants in the remaining years. Further, the Board insists that the capital improvements complained of were made with restricted funds, which were not available to supplement the operating budget. The Board of Education asserts that salaries and fixed costs in the 1982–83 school year

---

**2.** Section 18A–4–5 was amended in 1984 and in 1985. This discussion relates to the provision as it was in effect in 1982. The current provision, W.Va.Code § 18A–4–5a (Supp.1987) includes a similar proviso.

**3.** *Cf.* Syllabus, *Neal v. Board of Educ.,* 116 W.Va. 435, 181 S.E. 541 (1935) (county superintendents' power over teachers not to be used arbitrarily or capriciously).

were 85% of the budget, as compared to a State guideline of 70% of the budget for those expenses, and also that there is nothing else to cut from the budget. Utilities have nearly doubled, transportation costs have increased markedly, and even without the salary supplement the Board had to terminate eleven teachers in the 1986–87 school year. The School Board also points out that if it had provided a salary supplement from non-levy funds in any year, it would be required by § 18A–4–5 to continue the supplement absent the occurrence of another of the events set out in the proviso.

The Summers County Board of Education, like the boards of education in virtually every county in the State of West Virginia, has had to make difficult budget decisions in the wake of rising costs and declining revenues. Although we sympathize with the plight of underpaid teachers, and we applaud the continuing efforts of all concerned to obtain more money for better education of the children of this State, we conclude that the Summers County Board of Education violated no statutory or constitutional duty by discontinuing the supplements to the salaries of its personnel.

For these reasons, the decision of the Circuit Court of Summers County is affirmed.

Affirmed.

McGRAW, Justice, dissenting:

I respectfully dissent from the majority's holding that county boards of education, when faced with the defeat of a special levy, may cut teacher and service personnel salaries, while maintaining, at current levels, expenditures for capital improvements, administrative salaries, and noninstructional supplies.

As noted by the majority, West Virginia Code, 18A–4–5 (1984 Replacement Vol.), provided, at the time this litigation was initiated, that "no county ... shall reduce local funds allocated for instructional salaries ... unless forced to do so by failure of a special levy, or a loss in assessed values, or state aid, or events over which it has no control." In my view, this provision, in accordance with the constitutional mandate that, "The legislature shall provide, by general law, for a thorough and efficient system of schools," W.Va. Const. art. XII, 10, establishes "instruction" as the core of our educational system.

Teachers are the heart of the instructional component of our educational system. Without quality craftsmanship, the finest tools and raw materials would produce no works of art. Without quality teachers, the finest facilities and the brightest students would produce no great scholars. At a time when financial resources are diminishing for education in this State, hard choices must be made.

Again, as the majority notes, West Virginia Code, 18–9B–8 (1984 Replacement Vol.), establishes priorities to assist county boards of education in making these hard choices. First, capital expenditures should be postponed. Second, expenditures for noninstructional supplies should be decreased. Third, noninstructional days should be reduced. Fourth, salary supplements should be cut. Finally, adjustments should be made in other budget items to assure the instructional term.

The majority implicitly holds that if no specific finding is made regarding possible reduction of the school term, this list of priorities does not apply. This permits a school board to avoid application of the statute by merely failing to make such finding. If reduction in revenue is imminent, such as after the defeat of a special levy, a school board may immediately reduce teacher and service personnel salaries without considering other viable alternatives, such as postponement of new construction or purchase of new school buses, until another special levy election can be held or additional sources of revenue can be located. Not only does this conflict with the spirit, if not the letter, of the applicable statutes, it seriously undermines the instructional component of our educational system.

Much lip service is paid to education in this State, but little is truly accomplished. Our educational system is neither thorough

nor efficient. Promises unfulfilled have left our teachers bitter and struggling to make ends meet. Some of our best teachers have left altogether. The tea and sympathy offered by the majority does little to offer any hope of change.