366 S.E.2d 743

**STATE ex rel. BOARD OF EDUCATION FOR the COUNTY OF GRANT and Board of Education for the County of Ritchie**

v.

**Honorable A. James MANCHIN, Treasurer of the State of West Virginia; Glen B. Gainer, Auditor of the State of West Virginia; and Honorable W. Tom McNeel, State Superintendent of Schools.**

No. 17985.

Supreme Court of Appeals of West Virginia.

Feb. 24, 1988.

J. David Cecil, Cecil, Barth & Thompson, Charleston, for Bd. of Educ. for Grant County and Ritchie County.

Charles G. Brown, Atty. Gen., Richard L. Lancianese for A.J. Manchin.

Scott Ash, Asst. Atty. Gen. for Bd. Educ. and McNeel.

Silas B. Taylor, Deputy Atty. Gen., for Glen Gainer.

McHUGH, Chief Justice:

This case is before this Court upon a writ of mandamus wherein the petitioners, the Boards of Education of Grant and Ritchie counties, maintain that *W. Va. Code*, 18A–4–5 [1985], the statute implemented to assist the State in achieving salary equity among the teachers and service personnel of all counties statewide, is unconstitutional.[1] The petitioners further assert that they are entitled to receive state support in order to maintain the minimum salary requirements for teachers and service personnel set forth in *W. Va. Code*, 18A–4–2 and 18A–4–8a, as amended, despite the statutory provision to the contrary embodied in *W. Va. Code*, 18A–4–5 [1985]. The respondents in this case are the Honorable A. James Manchin, Treasurer of the State of West Virginia, Glen B. Gainer, the State Auditor, and the Honorable W. Tom McNeel, the State Superintendent of Schools. After reviewing the petition, the responses and the supplemental information made a part of the record in this case and after hearing argument of counsel, we conclude that the writ should be granted.

I

The petitioners each had an excess levy in effect on January 1, 1984. This local levy was used for various purposes including the supplementation of professional and service personnel salaries and/or wages.

Effective July 1, 1985, the legislature amended *W. Va. Code*, 18A–4–5 so as to prohibit counties which discontinued county supplements used for salaries after January 1, 1984, from receiving pro rata equitable distribution of state equity funds. As a result of that statutory prohibition, although a county may have lost its excess levy because of defeat at the polls, the State Board of Education could not consid-

---

1. *W. Va. Code*, 18A–4–5 [1985] provides, in pertinent part:

To assist the state in meeting its objective of salary equity among the counties, on and after the first day of July, one thousand nine hundred eighty-four, subject to available state appropriations and the conditions set forth herein, each teacher and school service personnel shall receive a supplemental amount in addition to the amount from the state minimum salary schedules provided for in this article.

. . . .

Pursuant to this section, each teacher and school service personnel shall receive the amount that is the difference between their authorized state minimum salary and ninety-five percent of the maximum salary schedules prescribed in sections five-a and five-b of this article, reduced by any amount provided by the county as a salary supplement for teachers and school service personnel on the first day of January of the fiscal year immediately preceding that in which the salary equity appropriation is distributed: Provided, That no amount received pursuant to this section shall be decreased as a result of any county supplement increase instituted after the first day of January, one thousand nine hundred eighty-four, unless and until the objective of salary equity is reached: Provided, however, *That, in the event any county reduces funds allocated for salary supplements as provided for in sections five-a and five-b of this article, the amount received for equity pursuant to this section, if any, shall continue to be reduced by any amount provided by the county as a salary supplement in effect on the first day of January, one thousand nine hundred eighty-four, if any, unless and until the objective of salary equity among the counties having no such reduction is reached pursuant to this section:* Provided further, That any amount received pursuant to this section may be reduced proportionately based upon the amount of funds appropriated for this purpose.

No county may reduce any salary supplement that was in effect on the first day of January, one thousand nine hundred eighty-four, except as permitted by sections five-a and five-b of this article.

(emphasis added)

er that loss in its distribution of state equity funds.

Grant County's excess levy expired on June 30, 1985, and Ritchie County's excess levy expired in June of 1986. Despite efforts to continue the levies in both counties, they were ultimately rejected by the voters. Grant County unsuccessfully attempted to continue the levy in August, 1984, March, 1985 and November, 1986; Ritchie County's unsuccessful attempts occurred in November, 1985 and February, 1986.

As a result of the requirement in *W.Va. Code*, 18A–4–5 [1985] that such excess levies be considered under the equity funding formula, despite the loss of such funds to those counties after January 1, 1984, the petitioners contend that school service personnel and teacher salaries in their respective counties have dropped below the minimum mandated by *W.Va.Code*, 18A–4–2 [1986] and 18A–4–8a [1986].[2]

The petitioners maintain that the loss of special levy funds in Ritchie County alone has resulted in an annual minimum loss of $900 to a maximum loss of $1174.50 in teacher salaries. Prior to the expiration of the excess levy, the Grant County Board of Education supplemented a teacher with a bachelor's degree and no years of experience in the amount of $1500. After the loss of excess levies for supplementing salaries, the Grant County Board of Education, like the Ritchie County Board of Education, received no increase in state equity funding. The defeat of the excess levies, coupled with the statutory prohibition preventing the increase of state equity funding for salary supplementation, resulted in Grant County's teachers and service personnel being the lowest paid in the State for fiscal year 1987–88.

II

The narrowly drawn issue before this Court in this proceeding is whether the statutory provision of *W.Va.Code*, 18A–4–5, which was designed to assist the State in attaining salary equity among the teachers and service personnel in all counties throughout the State, is unconstitutional.[3]

The petitioner's primary contention is that *W.Va.Code*, 18A–4–5 [1985], in effect, permits an unequal and discriminatory compensation system which results in a direct reduction in salaries to teachers and school service personnel in the respective counties. They contend that this statute operates to perpetuate the inequalities it

---

**2.** The salaries to the petitioners' teachers and service personnel are at or above the state minimum salary schedules mandated by *W.Va.Code*, 18A–4–2 and 18A–4–8a [1986]. These minimum salaries are funded within the seven-step foundation formula found in *W.Va.Code*, 18–9A–3 [1981] and are not dependent on county supplements or state equity funding.

**3.** This Court recently addressed a similar issue with regard to the equity funding formula established in *W.Va.Code*, 18A–4–5, as amended. In *Summers County Education Association v. Summers County Board of Education*, 179 W.Va. 107, 365 S.E.2d 387 (1987), a professional association representing employees of the Summers County Board of Education sued the Board of Education for reinstatement of county salary supplements after the defeat of special levy referenda in two elections in 1982. From 1982 until the time that lawsuit was instituted, no employee of the Summers County Board of Education received a salary supplement, and no excess levy had since been proposed. In construing *W.Va.Code*, 18A–4–5 [1984], we recognized that the legislature anticipated the situation in which the Board of Education found itself by expressly allowing school boards to discontinue salary supplements funded by local excess levies when "forced to do so by failure of a special levy." This Court concluded that "[a] county board of education may reduce or discontinue local salary supplements to teachers and other personnel when forced to do so by failure of a special levy. *W.Va.Code* § 18A–4–5 (1984)." Syl., *Summers County Education Association v. Summers County Board of Education, supra.*

A distinguishing feature in the *Summers County* case is that the petitioners there sought funding for salary supplements from the county. Conversely, in the case now before us, the petitioners are seeking that funding from the State.

It should also be noted that *W.Va.Code*, 18A–4–5 was amended in 1984 and again in 1985. The discussion of this statutory provision in the *Summers County* case *supra* related to the provision as it was in effect in 1982. The current statute concerning county salary supplements for teachers, *W.Va.Code*, 18A–4–5a [1984], includes a similar proviso. *See Summers County Education Association v. Summers County Board of Education, supra* at note 2; *see also* note 5, *infra.*

was implemented to abolish because counties which never passed excess levies are treated differently from counties which had excess levies as of January 1, 1984, but failed to renew them.

Article 4 of chapter 18A governs the salaries, wages and other benefits provided to school personnel. Specifically, *W. Va. Code*, 18A–4–2 [1986] and *W. Va. Code*, 18A–4–8a [1986], establish the state minimum salaries for teachers and service personnel.[4] *W. Va. Code*, 18A–4–5 [1985] was enacted to assist the counties, through the State Board of Education, in attaining statewide salary equity "subject to available state appropriations." Pursuant to the salary equity statute, "each teacher and school service personnel shall receive a supplemental amount in addition to the amount from the state minimum salary schedules" provided for in *W. Va. Code*, 18A–4–2 and 18A–4–8a [1986]. *See* note 1, *supra.*

*W. Va. Code*, 18A–4–5a and –5b [1984][5] establish guidelines in determining county

4. *W. Va. Code*, 18A–4–2 [1986] sets forth the state minimum salary schedule for teachers with respect to years of experience and the degree earned by the teacher. *W. Va. Code*, 18A–4–8a [1986] fixes the state minimum salary schedule for school service personnel based upon the individual's years of employment and "class title" (occupation).

5. *W. Va. Code*, 18A–4–5a [1984] provides in pertinent part:

The board may establish salary schedules which shall be in excess of the state minimums fixed by this article, such county schedules to be uniform throughout the county as to the above stipulated training classifications, experience, responsibility and other requirements, except that no such county schedule may exceed one hundred two and one-half percent of a schedule which incorporates the state minimum salary for teachers in effect on the first day of July, one thousand nine hundred eighty-four, and adopts a supplement which equals the highest supplement provided by a county on the first day of January, one thousand nine hundred eighty-four, so as to assist the state in meeting its objective of salary equity among the counties: Provided, that all teachers in the state shall be entitled to any increases in the minimum salary schedules established under the provisions of this article, and when a county schedule changes due to said increase in the state minimum salary taking effect after the first day of July, one thousand nine hundred eighty-four, it shall not be deemed to exceed the maximum salary schedule prescribed herein.

... Uniformity also shall apply to such additional salary increments or compensation for all persons performing like assignments and duties within the county: Provided, that in establishing such local salary schedules, no county shall reduce local funds allocated for salaries in effect on the first day of January, one thousand nine hundred and eighty-four, and used in supplementing the state minimum salaries as provided for in this article, unless forced to do so by.defeat of a special levy, or a loss in assessed values or events over which it has no control and for which the county board has received approval from the state board prior to making such reduction.

*W. Va. Code*, 18A–4–5b [1984] states:

The county board of education may establish salary schedules which shall be in excess of the state minimums fixed by this article, except that no such schedule may exceed one hundred two and one-half percent of a schedule which incorporates the state minimum salary for school service personnel in effect on the first day of July, one thousand nine hundred eighty-four, and adopts a monthly supplement of two hundred and five dollars for zero years of experience for all pay grades and which increases said monthly supplement by two dollars for each year of experience codified for school service personnel in this article, so as to assist the State in meeting its objective of salary equity among the counties: Provided, that all service personnel in the State shall be entitled to any increase in the minimum salary for school service personnel established under the provisions of this article, and when a county schedule changes due to said increase in the state minimum salary taking effect after the first day of July, one thousand nine hundred eighty-four, it shall not be deemed to exceed the maximum salary schedule prescribed herein....

These county schedules shall be uniform throughout the county with regard to any training classification, experience, years of employment, responsibility, duties, pupil participation, pupil enrollment, size of buildings, operation of equipment or other requirements. Further, uniformity shall apply to all salaries, rates of pay, benefits, increments or compensation for all persons regularly employed and performing like assignments and duties within the county: Provided, that in establishing such local salary schedules, no county shall reduce local funds allocated for salaries in effect on the first day of January, one thousand nine hundred eighty-four, and used in supplementing the state minimum salaries as provided for in this article, unless forced to do so by defeat of a special levy, or a loss in assessed values or events over which

salary supplements for teachers and school service personnel, respectively. These sections both place a limitation upon the amount of the county salary supplement based upon the state minimum salary for the employees set forth in *W.Va.Code*, 18A–4–2 [1986] and 18A–4–8a [1986]. However, these statutes fail to address the situation we are presented with in this mandamus proceeding: the status of the state equity supplement when excess levy funds which were available to the county boards on January 1, 1984, are discontinued.

The petitioners have attached exhibits to the record herein which are illustrative of the disparity created by *W.Va.Code*, 18A–4–5 [1985]. Together these exhibits demonstrate that on January 1, 1987, twelve West Virginia counties had no excess levies in effect to supplement the salaries of teachers and service personnel.[6] Each county having no excess levy in effect on January 1, 1984, received from the State Board of Education the maximum supplement permitted under *W.Va.Code*, 18A–4–5 [1985].

However, the petitioners who had excess levies in effect on January 1, 1984, were supplemented by the State Board of Education only to the extent necessary to bring the salaries in line with the maximum state equity under the equity funding formula, as if the excess levies in the respective counties were still in effect. Thus, after the defeat of the excess levies at the polls, the petitioners received the same state equity funding with no county supplements, while counties which had no excess levy in effect on January 1, 1984, and still have no excess levy financing, receive the maximum state equity funding.[7]

From the foregoing, it is evident that the application of *W.Va.Code*, 18A–4–5 [1985] results in counties which never passed excess levies being treated more favorably than those counties, like the petitioners, which had excess levies in effect on January 1, 1984, but failed to continue them. The petitioners therefore maintain that *W.Va.Code*, 18A–4–5 [1985] is in violation of article XII, section 1 of the *West Virginia Constitution*.

it has no control and for which the county board has received approval from the state board prior to making such reduction.

**6.** The twelve counties which had no excess levy in effect on January 1, 1987, are as follows: Barbour, Braxton, Calhoun, Clay, Grant, Hardy, Pendleton, Ritchie, Roane, Summers, Tucker and Webster.

**7.** A specific comparative example of the practical effect of this statutory provision on one of the petitioner county boards of education with a county having no excess levy in effect on January 1, 1984, demonstrates the disparate treatment resulting from the application of *W.Va. Code*, 18A–4–5 [1985].

In fiscal year 1985–86, a teacher with a bachelor's degree and no years of experience employed by the petitioner, Ritchie County Board of Education, received the state minimum salary of $12,655. A county salary supplement of $900 from the county's excess levy funding would then be added to the base figure of $12,655, as would an additional $900 from the State Board of Education as its state equity funding for a total salary of $14,455. However, because the petitioner lost its excess levy for salary supplementation at the polls, during fiscal year 1987–88, that same teacher now receives the state minimum salary, $13,255, as required by *W.Va.Code*, 18A–4–2 [1986], no county supple-

ment, and state equity in the same amount of $900, for a total salary of $14,155, three hundred dollars less than what was paid to a teacher with identical qualifications three years earlier. This progression continues depending on the degree retained and the years of experience of each individual teacher.

On the other hand, a county such as Hardy County which had no excess levy for salary supplements in effect on January 1, 1984, received the requisite statutory salary minimum for teachers and service personnel along with the maximum state equity funding. Utilizing the example set forth above, in fiscal year 1985–86, a teacher with a bachelor's degree and no years of experience received the minimum state salary of $12,655. In addition, that teacher also received the maximum state equity funding from the State Board of Education in the amount of $1800 for a total annual salary of $14,455. In fiscal year 1987–88, a similarly situated teacher with a bachelor's degree and no years of experience received the statutory minimum salary of $13,255. Because there was no excess levy in effect in Hardy County on January 1, 1984, and thus no county salary supplement, the maximum state equity funding of $1800 is added to that figure for a total annual salary of $15,055. This progression, likewise, continues based upon the earned degree and years of experience for teachers.

Similar results are attained when comparing the salaries and corresponding state equity

The first section of our *Constitution*'s education article succinctly states: "The legislature shall provide, by general law, for a thorough and efficient system of free schools."

The constitutional mandate for a thorough and efficient education in no way precludes us from applying the equal protection principles to the present financing system. In fact, under *Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979), the decision to apply an equal protection analysis to the case now before us is compelled.[8]

This Court examined the "thorough and efficient" provision in *Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979). In *Pauley*, the appellants, parents of children attending public schools in Lincoln County, alleged that the State's system for financing public schools was unconstitutional because it denied their children the "thorough and efficient" education required by article XII, section 1 and denied them equal protection of the law. The Court was particularly directed to inequalities that existed in secondary education opportunity and achievement resulting from imbalanced annual funding, facilities, curriculum and personnel of schools in property-poor counties, compared with those in more wealthy counties in the State.

■ The Court defined a "thorough and efficient" system of schools as one which "develops, as best the state of education expertise allows, the minds, bodies and social morality of its charges to prepare them for useful and happy occupations, recreation and citizenship, and does so economically." 162 W.Va. at 705, 255 S.E.2d at 877; *see also Bailey v. Truby*, 174 W.Va. 8, 16, 321 S.E.2d 302, 310 (1984). After reciting its definition of what constitutes a "thorough and efficient" system of schools, the Court concluded in syllabus point 3 of *Pauley, supra:*

The mandatory requirements of 'a thorough and efficient system of free schools' found in Article XII, Section 1 of the West Virginia Constitution, make education a fundamental, constitutional right in this State.

■ This Court has repeatedly recognized that where a fundamental, constitutional right is involved and an equal protection challenge is made, the State's action is given a stricter scrutiny, and the State must advance a compelling state interest to uphold the discriminatory classification.[9]

funding of school service personnel in the respective counties during the same time frame.

8. In so holding, we are not unmindful of this Court's language in *Pauley, supra*, indicating its belief that revenues generated from excess levies voted by citizens in a given county would not be subject to an attack under the State's equal protection principles. 162 W.Va. at 711–12, 255 S.E.2d at 880.

In *Pauley*, the Court primarily concentrated on equal protection violations with respect to the "thorough and efficient" clause of the State constitution. *See* discussion *infra*. In the case now before us, we look to this constitutional mandate as well; however, our focus also involves a more traditional equal protection analysis: a case of disparate treatment. This case has arisen because the petitioners are challenging the State's educational financing system which impermissibly favors counties which have never passed excess levies over those which had excess levies but failed to renew them. This challenge is before this Court because the legislature has created, by enacting *W.Va.Code*, 18A–4–5 [1985], an arbitrary classification which we recognized in *Pauley* as actionable under equal protection principles. 162 W.Va. at 712, 255 S.E.2d at 880.

9. Our State constitution's equal protection mandates are found in article III, section 10 and article III, section 17. Respectively, their pertinent provisions state: "No person shall be deprived of life, liberty, or property, without due process of law, ..." [article III, section 10], and "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." [article III, section 17].

We note that article III, section 10 embodies the State's equal protection principles. *See, e.g., Pauley v. Kelly*, 162 W.Va. at 674, 255 S.E.2d at 861, and the cases cited at note 2 therein. This Court has also recognized that the open courts provision of article III, section 17 contains an equal protection component as well. *See, e.g., State ex rel. Longanacre v. Crabtree*, 177 W.Va. 132, 135 n. 5, 350 S.E.2d 760, 763–64 n. 5 (1986); *Pauley v. Kelly, supra*, at note 3; *State ex rel. Piccirillo v. City of Follansbee*, 160 W.Va. 329, 333, 233 S.E.2d 419, 423 (1977).

The fourteenth amendment to the *Constitution of the United States* provides, in pertinent part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."

*See State ex rel. Longanacre v. Crabtree,* 177 W.Va. 132, 135, n. 4, 350 S.E.2d 760, 763 n. 4 (1986); *Pauley v. Kelly,* 162 W.Va. 672, 707, 255 S.E.2d 859, 878 (1979); *Shackleford v. Catlett,* 161 W.Va. 568, 572, 244 S.E.2d 327, 330 (1978); *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 333, 233 S.E.2d 419, 422 (1977); *Cimino v. Board of Education,* 158 W.Va. 267, 274, 210 S.E.2d 485, 490 (1974). In syllabus point 4 of *Pauley v. Kelly, supra,* the Court applied the above reasoning in the context of educational financing and ruled:

> Because education is a fundamental, constitutional right in this State, under our Equal Protection Clause any discriminatory classification found in the State's educational financing system cannot stand unless the State can demonstrate some compelling State interest to justify the unequal classification.

Thus, under our edict in *Pauley v. Kelly,* a statute that creates a lack of uniformity in our State's educational financing system is subject to strict scrutiny, requiring a compelling state interest to sustain its constitutionality. *See Bailey v. Truby,* 174 W.Va. at 23, 321 S.E.2d at 317.

In the case now before us, the petitioners have demonstrated that the statute, *W.Va. Code,* 18A–4–5 [1985] contains an invidious classification which awards state equity funding for salary supplementation purposes in an amount based upon whether or not the particular county had in effect an excess levy to provide additional financing on a particular date. *See Pauley v. Kelly, supra* at note 2. The respondents have failed to articulate any specific facts that would justify such disparate treatment nor do they point to any legislative history that would indicate any reason for the classification. We can find no compelling state interest to support this discriminatory system of educational financing.

■ Accordingly, we conclude that *W.Va. Code,* 18A–4–5 [1985], to the extent that it fixes a county's entitlement to state equity funding based upon whether an excess levy was in effect in that particular county on January 1, 1984, and continues to limit that county's funding to the specific amount awarded on January 1, 1984, despite the fact that the county's voters subsequently rejected continuation of the levy at the polls, violates equal protection principles because such a financing system operates to treat counties which never passed excess levies more favorably than those which had excess levies in effect on January 1, 1984, but failed to renew them. *W.Va. Const.* art. III, §§ 10 and 17.

The present system for financing salary supplements for teachers and school service personnel pursuant to *W.Va. Code,* 18A–4–5 [1985] allocates funds according to a county's ability not only to pass an excess levy but more significantly it is based upon a county's ability to retain the levy. Because of their inability or refusal to continue their respective levies, the petitioners cannot sustain the level of salaries attained by their teaching and service personnel when the excess levies were in effect. Under *W.Va. Code,* 18A–4–5 [1985], the system of allocation of state equity funds for salary supplementation is impermissibly based upon a county's ability to maintain an excess levy. Clearly, this factor bears no relationship to educational needs.

Several courts throughout the country have recognized that a child's education is vitally important, both to the child as an individual and to society as a whole. *See, e.g., Pauley v. Kelly, supra; Plyler v. Doe,* 457 U.S. 202, 221–24, 102 S.Ct. 2382, 2396–98, 72 L.Ed.2d 786, 801–03 (1982); *Abbott v. Burke,* 100 N.J. 269, 295, 495 A.2d 376, 390 (1985) (collecting cases); *Washakie County School District No. 1 v. Herschler,* 606 P.2d 310, 333–34 (Wyo.), *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980). Critical to the fulfillment of this State's responsibility to provide each child enrolled in its public schools with a "thorough and efficient" education is the ability of a county school board to attract, employ and retain a high quality staff of teaching and school service personnel.

As was feared in *Pauley v. Kelly, supra,* fluctuation in spending patterns has resulted in an unequal distribution of the State's funds earmarked for education. The case now before this Court is illustrative of the

classic problem arising when the financing of a school system is based, even partially, on the passing and retention of excess levies. With such disparate treatment of the counties based upon their retention of excess levies, boards of education in counties which have failed to renew levies, like the petitioners, will undoubtedly be incapable of attaining and maintaining a high quality staff of professional and service personnel because salaries in such counties will naturally fall behind those in counties which never had excess levies.[10]

Recently, in *State ex rel. Longanacre v. Crabtree, supra,* we considered a challenge by magistrates in certain counties claiming that the statute setting their salaries violated equal protection principles. After determining that the challenged statute was, in fact, violative of equal protection concepts, we deferred entry of a final order in the case to accommodate a legislative solution. In *Longanacre,* we noted that in the past this Court, when confronted with public pay disputes, has, on occasion, stayed the entry of a final order in order to provide the legislature with a reasonable time to correct the deficiency. *See, e.g., State ex rel. Partain v. Oakley,* 159 W.Va. 805, 227 S.E.2d 314 (1976). This practice is consistent with our policy of adopting the least intrusive remedy when a statute is found to be unconstitutional. *Longanacre, supra,* 350 S.E.2d at 765.[11]

In *Pauley v. Kelly, supra,* we determined that the ultimate responsibility for maintaining a thorough and efficient school system falls upon the State. In *Pauley,* we cited approvingly the language of the Supreme Court of New Jersey in *Robinson v. Cahill,* 62 N.J. 473, 513, 303 A.2d 273, 294 (1973):

'Whether the State acts directly or imposes the role upon local government, the end product must be what the Constitution commands. *A system of instruc-*

*tion in any district of the State which is not thorough and efficient falls short of the constitutional command.* Whatever the reason for the violation, the obligation is the State's to rectify it. *If local government fails, the State government must compel it to act, and if the local government cannot carry the burden, the State must itself meet its continuing obligation.'*

*Pauley,* 162 W.Va. at 697, 255 S.E.2d at 873 (emphasis added).

Accordingly, we determine that in view of the unconstitutionality of the equity funding formula in *W.Va.Code,* 18A–4–5 [1985], the legislature has the duty to take corrective action to amend the statute. Because some period of time will be necessary for the legislature to develop a statutory financing scheme which will pass constitutional muster, the effect of this decision will be stayed until fiscal year 1988–89 begins.

Writ granted.

---

10. Excluding consideration of the passage of a statewide excess levy, it is of great concern to us that voters in other counties could refuse to retain excess levies and, ultimately, each of these counties would be similarly disadvantaged with respect to those counties which never had excess levies.

11. For cases applying the doctrine of "least intrusive remedy," *see Bailey v. Truby,* 174 W.Va.

8, 11, note, 321 S.E.2d 302, 305, note (1984); syl. pt. 2, *Anderson's Paving, Inc. v. Hayes,* 170 W.Va. 640, 295 S.E.2d 805 (1982); syl. pt. 2, *Weaver v. Shaffer,* 170 W.Va. 107, 290 S.E.2d 244 (1980); *Don S. Co. v. Roach,* 168 W.Va. 605, 613, 285 S.E.2d 491, 496 (1981); *State ex rel. Whitman v. Fox,* 160 W.Va. 633, 642–43, 236 S.E.2d 565, 571 (1977).