453 S.E.2d 368

STATE of West Virginia ex rel. BOARD OF EDUCATION FOR the COUNTY OF RANDOLPH, Petitioner Below, Appellant

v.

Larrie BAILEY, Treasurer of the State of West Virginia; Glen B. Gainer, Auditor of the State of West Virginia; West Virginia Board of Education; and Henry R. Marockie, State Superintendent of Schools, Respondent Below, Appellees.

The Board of Education of Upshur County, Intervenor Below, Appellant.

No. 22167.

Supreme Court of Appeals of West Virginia.

Submitted 27 Sept. 1994.

Decided 15 Dec. 1994.

---

Harry M. Rubenstein, Elma M. Reed, Kay, Casto, Chaney, Love & Wise Morgantown, and John O. Kizer, Kay, Casto, Chaney, Love & Wise Charleston, for appellants.

Darrell V. McGraw, Atty. Gen. and Victor Barone, Sp. Asst. Atty. Gen., Charleston, for West Virginia Bd. of Educ. and Henry R. Marockie.

Darrell V. McGraw, Atty. Gen. and Silas B. Taylor, Senior Deputy Atty. Gen., Charleston, for Thomas E. Loehr, Larry Bailey, Treasurer and Glen B. Gainer, Jr., Auditor.

NEELY, Justice:

The Board of Education of Randolph County ("Randolph County Board") and the Board of Education of Upshur County ("Upshur County Board") appeal from the 20 September 1993 Order of the Circuit Court of Kanawha County denying their request to declare *W.Va.Code* 18A–4–5, as amended in 1988, unconstitutional. *W.Va.Code* 18A–4–5 [1988] was passed to assist the State in achieving salary equity among the teachers and service personnel of all counties. The appellants assert that they are entitled to receive State equity pay salary supplements, despite statutory provisions to the contrary in *W.Va.Code* 18A–4–5, as amended in 1988.

The Appellees in this case are the State Treasurer, the State Auditor, the West Virginia Board of Education, and the State Superintendent of Schools. The Randolph County Board of Education ("Randolph County Board") filed a petition for writ of mandamus seeking a determination that the 1988

amendments to *W.Va.Code* 18A–4–5 failed to correct the constitutional funding defects in the State equity funding formula, which we recognized in *State ex rel. Bd. of Educ. for Grant County v. Manchin,* 179 W.Va. 235, 366 S.E.2d 743 [1988]. Randolph County had an excess levy in effect on 1 January 1991, which expired on 30 June 1991, because the voters failed to renew the excess levy during a November 1990 election.[1] At the conclusion of a 15 December 1992 hearing on the petition in the Circuit Court of Kanawha County, the Court took the matter under advisement.

On 23 January 1993, the Upshur County voters failed to renew the county's excess levy. Accordingly, the levy, in effect on 1 January 1993, expired on 30 June 1993. By Agreed Order entered 18 March 1993, the Upshur County Board was permitted to intervene in the case. Another hearing was held before the same court, and by order entered 20 September 1993, the Circuit Court found *W.Va.Code* 18A–4–5, as amended in 1988, to be constitutional. We conclude that the 1988 amendments to *W.Va.Code* 18A–4–5 [1985] are an unconstitutional violation of equal protection principles, and as such, fail to correct the defects noted by this court in *Manchin, supra.* Accordingly, we reverse the Circuit Court of Kanawha County.

## I.

The statutory funding for the salaries of West Virginia teachers and service personnel is as follows: (1) State "minimum salaries" provided in *W.Va.Code* 18A–4–2 [1994] and 18A–4–8(a) [1994]; (2) local county salary supplements funded by voter-approved local property tax levies ("excess levies"); and (3) State "equity pay" salary supplements provided for in *W.Va.Code* 18A–4–5 (1988). State "minimum salaries" are fully funded

1. *W.Va. Const.* art. X, § 10 authorizes any county to increase, by as much as 100 percent, the maximum levy rates allowable for public schools. These increases, or "excess levies," must be approved by a majority vote and are valid for up to five years.

2. *W.Va.Code* 18A–4–5 [1988] states, in pertinent part:

through the formula found in *W.Va.Code* 18–9A–1 [1990] *et seq.,* and are not dependant on local salary supplements or equity pay for funding.[2]

In this case we must focus on the interaction between State equity pay and excess levies to determine the overall effect of the 1988 amendments to *W.Va.Code* 18A–4–5. The appellants each had an excess levy in effect on 1 January. In 1988, the legislature amended *W.Va.Code* 18A–4–5 to prohibit counties that discontinued county supplements used for salaries after the first day of January from receiving pro-rata equitable distribution of State equity funds during the following fiscal year. Thus, although Randolph County's excess levy expired on 30 June 1991, and Upshur County's excess levy expired on 30 June 1993, *W.Va.Code* 18A–4–5 [1988] requires that those excess levies still be considered under the equity funding formula, despite the fact the voters discontinued these funds and they no longer exist.

*West Virginia Code* 18A–4–5(b), as amended in 1988, provides in pertinent part:

> Pursuant to this section, each teacher and school service personnel shall receive the amount that is the difference between their authorized state minimum salary and ninety-five percent of the maximum salary schedules prescribed in section five-a and five-b [§§ 18A–4–5a and 18A–4–5b] of this article, *reduced by any amount provided by the county as a salary supplement for teachers and school service personnel on the first day of January of the fiscal year immediately preceding that in which the salary equity appropriation is distributed:* Provided, That no amount received pursuant to this section shall be decreased as a result of any county supplement increase instituted after the first day of January, one thousand nine hundred eighty-four, unless and until the objective of salary

salary equity among the counties means that the salary potential of school employees employed by the various districts throughout the state does not differ by greater than ten percent between those offering the highest salaries and those offering the lowest salaries.... To assist the state in meeting its objective of salary equity among the counties,....

equity is reached: *Provided, however, That any amount received pursuant to this section may be reduced proportionately based upon the amount of funds appropriated for this purpose.*

(Emphasis added.) The effect on the appellants was that the salaries of the employees of the Randolph County Board and the Upshur County Board were supplemented by the State Board of Education, pursuant to *W.Va.Code* 18A–4–5 [1988], as if the local supplement from the excess levy was still in effect.

Therefore, despite an actual decrease in local revenues available for educational purposes, due to the voter defeat of excess levies, the Randolph County Board, like the Upshur County Board, received no increase in state equity funding. As a result, the Randolph County employees lost $454,049 in compensation for the fiscal year 1991–2, and Upshur County employees will have lost $641,307 during the 1993–94 school year. Both Randolph County's and Upshur County's teachers and service personnel were the lowest paid in the State in 1991–92 and 1993–94 respectively, as a result of the operation of *W.Va.Code* 18A–4–5 [1988].

### II.

The issue before this Court is whether the statutory provision of *W.Va.Code* 8A–4–5 [1988], which was designed to assist the State in attaining salary equity among teachers and service personnel in all counties throughout the State, is unconstitutional. The appellants' primary contention is that *W.Va.Code* 8A–4–5 [1988], in effect, continues to perpetrate an unequal and discriminatory compensation system on the county boards of education in the State of West Virginia. The Appellants' further assert that this statute impermissibly treats counties without an excess levy in effect on 1 January more favorably than those counties with an excess levy in effect on 1 January, and unnecessarily allocates state funding based on a county's ability to maintain an excess levy. As such, it is argued, then, *W.Va.Code* 18A–4–5 [1988] violates the equal protection requirements of the *West Virginia Constitution*, Art. III, Sections.[3]

■ Article XII, Section 1 of the *West Virginia Constitution*, states: "[t]he legislature shall provide, by general law, for a thorough and efficient system of free schools."[4] *Accord* Syl. pt. 1, *Manchin, supra*. In *Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979), we examined the "thorough and efficient" provision and applied an equal protection analysis to the issue of whether the State's system for financing education was unconstitutional. We concluded that: "[t]he mandatory requirements of 'a thorough an efficient system of free schools' found in Article XII, Section 1 of the *West Virginia Constitution*, make education a fundamental, constitutional right in this state." Syl. pt. 3, *Pauley, supra*.

■ Furthermore, in Syl. pt. 4 of *Pauley*, we ruled that: "[b]ecause education is a fundamental, constitutional right in this State, under our Equal Protection Clause *any* discriminatory classification found in the State's educational financing system cannot stand unless the State can demonstrate some com-

---

3. In *State ex rel. Boards of Educ. of the Counties of Upshur, et al. v. Chafin*, 180 W.Va. 219, 376 S.E.2d 113 (1988), we recognized that the constitutional authorization of excess levies in *W.Va. Const.* art. X, § 10 forecloses them from being declared unconstitutional.

The authority of the residents of a county to vote for and approve an excess levy for the support of public schools in the county, pursuant to *W.Va. Const.* art. X, § 10, is not subject to equal protection principles.
Syl. pt. 3, *Chafin*.

4. Our State constitution's equal protection mandates are found in article III, § 10 and article III, § 17. Respectively, these sections' pertinent provisions state: "No person shall be deprived of life, liberty, or property, without due process of law, ..." [article III, § 10], and "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." [article III, § 17].

We note that article III, section 10 embodies that State's equal protection principles. *See, e.g., Israel v. West Virginia Secondary Schools Activities Com'n*, 182 W.Va. 454, 461, 388 S.E.2d 480, 487 (1989); *State ex rel. Longanacre v. Crabtree*, 177 W.Va. 132, 135–36, n. 5, 350 S.E.2d 760, 763–64 n. 5 (1986); *Pauley v. Kelly, supra*, 162 W.Va. at 674, n. 3, 255 S.E.2d at 862, n. 3; *State ex rel. Piccirillo v. City of Follansbee*, 160 W.Va. 329, 333, 233 S.E.2d 419, 423 (1977).

pelling State interest to justify the unequal classification." [Emphasis added.] *Accord* Syl. pt. 2, *Manchin, supra.* Thus, a statute that creates a lack of uniformity in the State's educational financing system is subject to strict scrutiny, and this discrimination will be upheld only if *necessary* to further a "compelling state interest". *Manchin,* 179 W.Va. at 240–41, 366 S.E.2d at 748–749; *Bailey v. Truby,* 174 W.Va. 8, 23, 321 S.E.2d 302, 317 (1984).

In *Manchin, supra,* we held *W.Va.Code* 18A–4–5 [1985] unconstitutional. *West Virginia Code* 18A–4–5 [1985] provided in pertinent part:

To assist the state in meeting its objective of salary equity among the counties, on and after the first day of July, one thousand nine hundred eighty-four, subject to available state appropriations and the conditions set forth herein, each teacher and school service personnel shall receive a supplemental amount in addition to the amount from the state minimum salary schedules provided for in this article.

Pursuant to this section, each teacher and school service personnel shall receive the amount that is the difference between their authorized state minimum salary and ninety-five percent of the maximum salary schedules prescribed in sections five-a and five-b of this article, reduced by any amount provided by the county as a salary supplement for teachers and school service personnel on the first day of January of the fiscal year immediately preceding that in which the salary equity appropriation is distributed: Provided, That no amount received pursuant to this section shall be decreased as a result of any county supplement increase instituted after the first day of January, one thousand nine hundred eighty-four, unless and until the objective of salary equity is reached: *Provided, however, That, in the event any county reduces funds allocated for salary supplements as provided for in sections five-a and five-b of this article, the amount received for equity pursuant to this section, if any, shall continue to be reduced by any amount provided by the county as a salary supplement in effect on the first day of January, one thousand nine hundred eighty-four, if any,* unless and until the objective of salary equity among the counties have no such reduction is reached pursuant to this section. Provided further, That any amount received pursuant to this section may be reduced proportionately based upon the amount of funds appropriated for this purpose.

No county may reduce any salary supplement that was in effect on the first day of January, one thousand nine hundred eighty-four, except as permitted by sections five-a and five-b of this article.

(Emphasis added.) The effect of the 1985 statute was that counties which did not have excess levies in effect on that date were treated more favorably than those counties which had excess levies in effect but failed to renew them.

In counties where excess levies were defeated at the polls, those counties received the same State equity funding with no county supplements, *as if the excess levies were still in effect.* Whereas counties without excess levies in effect on 1 January 1984, which continued to receive no excess levy financing, received the maximum state equity funding. Thus, we concluded that *W.Va.Code* 18A–4–5 [1985] violated equal protection principles.

In 1988, the legislature amended *W.Va. Code* 18A–4–5 in response to our decision in *Manchin.* In Syl. pt. 3, of *Manchin, supra,* we held that:

*W.Va.Code,* 18A–4–5 [1985], to the extent that it fixes a county's entitlement to state equity funding based upon whether an excess levy was in effect in that particular county on January 1, 1984, and continues to limit that county's funding to the specific amount awarded on January 1, 1984, despite the fact that the county's voters subsequently rejected continuation of the levy at the polls, violates equal protection principles because such a financing system operates to treat counties which never passed excess levies more favorably than those which had excess levies in effect on January 1, 1984, but failed to renew them. *W.Va. Const.* art. III, §§ 10 and 17.

The amended statute eliminated the reference to whether a county had an excess levy in effect as of 1 January *1984*, and established 1 January "of the fiscal year immediately preceding that in which the salary equity appropriation is distributed", as the benchmark used to determine equity funding for the following fiscal year.[5] *W.Va.Code* 18A–4–5 [1988].

Because the county boards' fiscal year runs from 1 July to 30 June, *W.Va.Code* 18A–4–5 [1988] effectively prohibits county boards of education from receiving state equity funds *for one year* in counties where voters failed to renew excess levies. The amended statute continues to treat counties failing to renew excess levies less favorably than counties that did not have an excess levy in the first place.[6] Thus, the effect of the 1988 amendments to *W.Va.Code* 18A–4–5, is a continuation of the inequities we identified as unconstitutional in *Manchin, supra.*

The fact that the 1988 amendments limit the inequity to one year does not eliminate our equal protection concerns. In *Manchin, supra* we stated that:

[c]ritical to the fulfillment of this State's responsibility to provide each child enrolled in its public schools with a 'thorough and efficient' education is the ability of a county school board to attract, employ and retain a high quality staff of teaching and service personnel.

. . . . .

With such disparate treatment of the counties based upon their retention of excess levies, boards of education in counties which have failed to renew levies, like the petitioners, will undoubtedly be incapable of attaining and maintaining a high quality staff of professional and service personnel because salaries in such counties will naturally fall behind those in counties which never had excess levies.

179 W.Va. at 242, n. 10, 366 S.E.2d at 749–50, n. 10. The Appellants have demonstrated that *W.Va.Code* 18A–4–5 [1988] continues to award state equity funding for salary supplementation in an amount based on whether the particular county had an excess levy in effect on a particular date. This statute has a negative impact upon the fundamental right to education in West Virginia.

We found this to be unconstitutional in *Manchin, supra,* holding that:

The present system for financing salary supplements for teachers and school service personnel pursuant to W.Va.Code, 18A–4–5 [1985] allocates funds according to a county's ability not only to pass an excess levy but more significantly it is based upon a county's ability to retain the levy. Because of their inability or refusal to continue their respective levies, the petitioners cannot sustain the level of salaries attained by their teaching and service personnel when the excess levies were in effect. Under W.Va.Code, 18A–4–5 [1985], *the system of allocation of state equity funds for salary supplementation is impermissibly based upon a county's ability to maintain an excess levy. Clearly, this factor bears no relation to educational needs.*

[Emphasis added.] *Id.* 179 W.Va. at 241, 366 S.E.2d at 749.

The appellees assert that the procedure provided by *W.Va.Code* 18A–4–5 (1988) represents the *only* viable procedure for determining state equity pay supplements in light of a compelling State interest in knowing school appropriation requests before the Legislature convenes in January. The Appellees' also assert that any resulting disparity in school funding between counties is short term, and constitutionally permissible. We disagree.

---

**5.** The 1988 amendments essentially reduced the penalty for failing to renew an excess levy from indefinitely to one (1) year. The 1994 amendments to *W.Va.Code* 18A–4–5, effective 20 March 1994, have not substantively changed the contested statutory impact on State equity funding that occurs when a county fails to renew an excess levy.

**6.** In *Manchin, supra* at note 9, we stated that "it is of great concern to us that voters in other counties could refuse to retain excess levies, and, ultimately, each of these counties would be similarly disadvantaged with respect to those counties which never had excess levies." This accurately describes the effect of *W.Va.Code* 18A–4–5 [1988].

While acknowledging that the State may have a interest in the Legislature receiving school appropriation requests in a timely fashion, we do not find that it sufficiently compelling to justify impinging upon the constitutionally recognized fundamental right to education. In *Pauley v. Kelly, supra,* we determined that the ultimate responsibility for maintaining a thorough and efficient school system falls upon the state.[7] *Accord Manchin, supra,* 179 W.Va. at 242, 366 S.E.2d at 750. Certainly the legislative purpose behind state salary supplements, which was "[t]o assist the state in meeting its objective of salary equity among the counties", is not being served by the effect of the statute as it now stands. *W.Va.Code* 18A–4–5(b) [1988].

We find no compelling state interest to support the discriminatory treatment codified in *W.Va.Code* 18A–4–5 [1988], which continues "to treat counties which never passed excess levies more favorably than those which had excess levies in effect on January 1 …, but failed to renew them." *Manchin,* 179 W.Va. at 241, 366 S.E.2d at 749. Applying strict scrutiny, absent a finding that a "compelling state interest" existed in this case, we need not, and decline to rule on whether the discriminatory practice of withholding state funds from county boards for one year based upon the ability to retain an excess levy is necessary. *West Virginia Code* 18A–4–5, as amended in 1988, perpetuates the discrimination we found to be unconstitutional in *Manchin, supra.*

 *W.Va.Code* 18A–4–5 [1988] violates state equal protection principles, to the extent it fixes a county entitlement to state equity funding based upon whether an excess levy was in effect on a particular date and continues to limit that county's funding to the specific amount awarded on that date, even if the county's voters subsequently rejected continuation of the levy at the polls. Accord-

ingly, we reverse the judgment of the Circuit Court.

Reversed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

---

**7.** In *Pauley v. Kelly, supra,* we cited with approval from *Robinson v. Cahill,* 62 N.J. 473, 513, 303 A.2d 273, 294 (1973):

Whether the State acts directly or imposes the role upon local government, the end product must be what the Constitution commands. A system of instruction in any district of the State which is not thorough and efficient falls

short of the constitutional command. Whatever the reason for the violation, the obligation is the State's to rectify it. If local government fails, the State government must compel it to act, and if the local government cannot carry the burden, the State must itself meet its continuing obligation.

*Pauley,* 162 W.Va. at 697, 255 S.E.2d at 873.